**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 32 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court dated October 28, 2015 at No. |
| | : | 2074 MDA 2014 Affirming the Order of |
| v. | : | the York County Court of Common |
| | : | Pleas, Criminal Division, dated |
| | : | November 6, 2014 at No. CP-67-CR- |
| LORNE BRETT HOPKINS, JR., | : | 0004536-2014 |
| | : | |
| Appellee | : | SUBMITTED:  September 7, 2016 |


<u>**OPINION IN SUPPORT OF AFFIRMANCE**</u>


**JUSTICE DONOHUE**                                    **DECIDED:  June 30, 2017**

In this discretionary appeal, we consider whether Article 1, Section 8 of the Pennsylvania Constitution requires the suppression of evidence seized pursuant to a search warrant when the information contained in the affidavit in support of probable cause is later determined to be demonstrably untrue, despite the absence of any showing of police misconduct.  Based upon this Court's historical rejection of a "good faith" exception to the exclusionary rule, *e.g.*, *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), the trial court properly suppressed the evidence in this case.

In May 2014, Detective Anthony Fetrow of the York Police Department was investigating a recent burglary at 1039 E. Philadelphia Street.  The investigation led Detective Fetrow to a suspect, Aaron Shifflet, who lived next to the burglarized residence.  When Detective Fetrow spoke with Shifflet at his residence, he noticed that Shifflet had cuts on his hands and arms that were just beginning to heal.  Detective

Fetrow took Shifflet to the police station, where Shifflet waived his rights and admitted to committing the burglary with a man he knew only as "Radio." Shifflet gave Detective Fetrow a physical description of Radio, and he subsequently picked out a photograph of Appellee, Lorne Brett Hopkins ("Hopkins"), from a photographic line-up. Based upon the information Shifflet provided about the burglary, Detective Fetrow sought a search warrant for Hopkins' residence. In the affidavit in support of probable cause for the issuance of the warrant, he averred as follows:

> [Shifflet] admitted to conspiring with another male who he knew only by the nickname of "Radio." He advised that the day prior to the burglary, he spoke with "Radio" and [Shifflet] suggested targeting the victims who reside at 1039 E. Phila. St. On the date of and time period of the burglary, "Radio" came over to [Shifflet's] address and they made sure the victims weren't home by knocking several times. They broke out the side window with a rock and knocked enough glass out to both crawl through. [Shifflet] advised that both of them got cut and were bleeding as a result. "Radio" rummaged and searched the victims' house for valuables, [Shifflet] left and went to his house to wash off the blood and then operated as a lookout from inside his front door. "Radio" tied his hooded jacket around himself to stop the bleeding. [Shifflet] was going to knock on the victims' front door if he saw anyone or the police come into the area. Appx. [sic] [fifteen] mins. later, "Radio" exited through the victims' front door carrying a dark blue duffel bag and fled on foot. [Shifflet] said that he thought the bag also came from the victims' house. "Radio" was supposed to give [Shifflet] money for helping but he never received anything. … He described "Radio" as a light skinned, biracial [b]lack male who lives in the 600 Blk. [sic] Chestnut St. He later picked "Radio" out of a photo identification line-up and was identified as [Hopkins], D.O.B., 8/17/88. Shifflet was charged in the burglary at 10[:]39 and committed to the York County Prison. On 6/2/14, I confirmed with the parole officer of [Hopkins] that his current residence is 676 Chestnut St. where he resided with his grandparents and several other relatives.
>
> Based on the above information, I am requesting a search warrant to search the residence and curtilage of 676

Chestnut St. I also request that any occupants present at the time of the search be subject to a search to make sure that evidence, contraband and/or stolen property is not secreted on their persons or destroyed.

Application for Search Warrant, 6/2/2014, at 2-3.

When the police executed the search warrant on June 3, 2014, they found none of the items stolen from 1039 E. Philadelphia Street or any other evidence that might prove that Hopkins had participated in that burglary. The police did, however, discover evidence of unrelated crimes, including crack cocaine, marijuana and a number of firearms. Hopkins was arrested and subsequently charged with two counts of possession of a controlled substance with intent to deliver and prohibited offensive weapons.[1] In an interview with Detective Fetrow, Hopkins admitted that he was known by the nickname Radio and that he sold drugs. He further admitted that he knew Shifflet, but denied participating in the burglary at 1039 E. Philadelphia Street. During the interview, Detective Fetrow observed that Hopkins did not have cuts on his arms or hands.

On June 16, 2014, while awaiting trial for the burglary, Shifflet admitted to Detective Fetrow that he had lied and that Hopkins did not commit the burglary with him. Shifflet explained that he knew Hopkins was involved in other illegal activity and he thought that implicating Hopkins in the burglary would improve his (Shifflet's) situation with regard to the burglary charges.

Hopkins filed a motion to suppress the evidence recovered from his residence during the search and his subsequent admissions to the police, arguing that the search warrant was invalid because it was based entirely on Shifflet's admittedly false statements. See Omnibus Pre-Trial Motion, 10/1/2014. The Commonwealth opposed

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 908.

the motion, arguing that the exclusionary rule did not apply because Detective Fetrow did not know that Shifflet's statements were false when he included them in his affidavit in support of probable cause. Following a hearing, the suppression court granted Hopkins' motion to suppress, indicating that while a good faith exception to the exclusionary rule exists under the Fourth Amendment to the United States Constitution, this Court in *Edmunds* recognized that Article 1, Section 8 of the Pennsylvania Constitution provides greater protection for the privacy of individuals and thus does not contemplate a good faith exception. Trial Court Opinion, 2/2/2015, at 8 (citing *Edmunds*, 586 A.2d at 897-99). The suppression court reasoned that suppression, although perhaps severe where the police officer does not intentionally mislead the issuing authority, is the only remedy that vindicates the rights of a person whose home is searched based on false information. *Id.* at 9-10.[2]

Pursuant to Pennsylvania Rule of Criminal Procedure 311(d),[3] the Commonwealth appealed the suppression court's order. In so doing, the Commonwealth did not dispute either that Shifflet's statements implicating Hopkins were false or that no independent basis existed to support a finding of probable cause. The only issue raised before the Superior Court was whether suppression was

---

[2] The suppression court identified another basis for its decision: the fact that Detective Fetrow "took the word of an individual he had presumably never met before" and made no attempt to verify or corroborate Shifflet's allegations before seeking the search warrant. Trial Court Opinion, 2/2/2015, at 9. Although it acknowledged that independent police corroboration may not be possible in every circumstance, the suppression court found that when an individual who has been arrested for a crime implicates another person in the commission of a crime, the police should undertake some investigation before simply accepting the arrestee's word.

[3] *See* Pa.R.A.P. 311(d) (permitting the Commonwealth to appeal as of right from an order that does not end the entire case upon certification that the order substantially handicaps or terminates its prosecution).

improperly granted because Detective Fetrow had acted in good faith when he set forth Shifflet's statements in the affidavit in support of probable cause, although they ultimately proved to be false. *Commonwealth v. Hopkins*, 2074 MDA 2014 at \*2 (Pa. Super. Oct. 28, 2015) (unpublished memorandum). The Superior Court affirmed, indicating that it was bound by its prior decision in *Commonwealth v. Antoszyk*, 985 A.2d 975 (Pa. Super. 2009) ("*Antoszyk I*"). Id. at \*14. Based upon *Antoszyk I* and *Edmunds*, the Superior Court concluded that there "is no good faith exception to the exclusionary rule in Pennsylvania, and the detective's efforts in this case, however intentioned, cannot serve as an avenue to escape the inescapable. The evidence had to be suppressed." *Id.* at \*15.

We granted the Commonwealth's petition for allowance of appeal to consider whether Article 1, Section 8 requires the suppression of evidence when an affiant relies on a third party's statements to establish probable cause for the issuance of a search warrant, and those statements are discovered to be false after execution of the warrant.[4] Generally, when reviewing the propriety of a suppression ruling, we are bound by the suppression court's findings of fact, so long as they are supported by evidence of record. *See, e.g.*, *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003). Conversely, where, as here, the appeal of the decision of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler*, 912 A.2d 1265, 1269 (Pa. 2006) (quoting *Commonwealth v. Nester*, 709 A.2d 879, 881 (Pa. 1998)). The conclusions of law of the courts below are subject to our plenary review. *See, e.g.*, *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

---

[4] Counsel for Hopkins declined to file a brief with this Court.

The Fourth Amendment to the United States Constitution[5] and Article 1, Section 8 of the Pennsylvania Constitution[6] both protect citizens from unreasonable searches and seizures. *See Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010). The exclusionary rule is a judicially-created device that prohibits the use of evidence obtained in violation of these rights. *See generally* 27 Standard Pennsylvania Practice 2d § 135:188. Misstatements of fact will invalidate a search warrant if they are deliberate and material. *See, e.g.*, *Commonwealth v. Baker*, 24 A.3d 1006, 1017 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013). "A material fact is one without which probable cause to search would not exist." *Id.* (quoting *Commonwealth v. Tucker*, 384 A.2d 938, 941 (Pa. Super. 1978)).

In *United States v. Leon*, 468 U.S. 897 (1984), the United States Supreme Court announced a "good faith" exception to the exclusionary rule. In *Leon*, information received from a confidential informant led officers to conduct a drug-trafficking

---

[5] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[6] Article I, § 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

investigation, which included surveillance of the multiple defendants' activities over the course of a month. In affidavits of probable cause in support of the search warrant requests, the officers relied upon the informant's statements and information gathered from this surveillance. The subsequent searches yielded large quantities of drugs as well as evidence of other criminal activity. The trial court, however, ruled that the officers' affidavits failed to establish probable cause and suppressed the evidence. A divided Ninth Circuit agreed, concluding, with regard to defendant Leon, that the relevant affidavits failed to provide a basis for the informant's allegations concerning his criminal activities and further lacked information establishing the informant's reliability. In so doing, the Ninth Circuit rejected the prosecution's argument that the exclusionary rule should not apply when officers rely, in good faith, on a magistrate's mistaken determination that probable cause exists to support the issuance of a search warrant.

The United States Supreme Court, however, ruled that a good faith exception to the exclusionary rule is appropriate in the absence of police misconduct. Weighing the costs and benefits involved in preventing the prosecution from using evidence obtained in reliance on a warrant ultimately found to be defective, the Court reasoned that when law enforcement officers have acted in objective good faith, the benefit afforded a defendant by the application of the exclusionary rule is disproportionately high and "offends basic concepts of the criminal justice system." *Id.* at 909. As such, it concluded that "[a]s with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* According to the Supreme Court in *Leon*, the purpose of the exclusionary rule under the Fourth Amendment is to deter police misconduct, and this purpose is not served in the absence of police misconduct. *Id.* at 921 ("Penalizing the

officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.").

In *Edmunds*, this Court rejected a *Leon*-esque good faith exception under Article 1, Section 8 of the Pennsylvania Constitution. *Edmunds* involved a search warrant for a white building and the curtilage thereto on Edmunds' property for the presence of marijuana. In the affidavit in support of probable cause, the affiant, a Pennsylvania State Trooper, stated that he received telephone calls from two anonymous males indicating that while scouting hunting areas, they came across what looked like marijuana growing in a clearing and in a white corrugated building located off of Route 31. The men indicated that Edmunds owned the property in question and provided a physical description of Edmunds. The police obtained and executed a search warrant, discovering seventeen marijuana plants, as well as various growing instruments, inside the white building. The contraband was seized and Edmunds was charged with multiple crimes relating to the possession and distribution of marijuana.

Edmunds sought suppression of the evidence, arguing that the warrant lacked sufficient probable cause because it did not set forth a timeframe in which the anonymous sources had observed the marijuana. The trial court agreed that the warrant was deficient on its face, but granted the Commonwealth's request for a supplemental hearing, at which the Commonwealth could provide oral supplementation of the facts set forth in the affidavit and warrant for the purpose of establishing the good faith exception to the exclusionary rule as announced in *Leon*. At this hearing, the issuing magistrate testified that although the trooper who sought the warrant failed to indicate when the anonymous sources observed the marijuana growing on Edmunds' property, she issued the warrant because she assumed, based on her history with the trooper, that the events had transpired the previous day. The suppression court

concluded that the warrant's failure to set forth a timeframe was a fatal defect that rendered the warrant invalid; however, it further concluded that suppression was not required because, per *Leon*, the police acted in good-faith reliance on the magistrate's probable cause determination. The Superior Court affirmed, ruling that the protections under Article 1, Section 8 and the Fourth Amendment are coextensive, and therefore the federal good faith exception to the exclusionary rule as articulated in *Leon* applied in Pennsylvania as well. *Commonwealth v. Edmunds*, 541 A.2d 368, 372 (Pa. Super. 1988), *rev'd*, 586 A.2d 887 (Pa. 1991).

On allowance of appeal, this Court reversed, concluding that permitting such an exception would undermine the guarantees embodied in Article 1, Section 8 of the Pennsylvania Constitution. Justice Cappy, writing for the Majority, indicated that while in *Leon*, the United States Supreme Court found that a good faith exception would not deviate from the Fourth Amendment's purpose to deter intentional police misconduct, no similar approach may be applied under Pennsylvania's Article 1, Section 8 jurisprudence:

> [W]e disagree with the [United States Supreme] Court's suggestion in [*Leon*] that we in Pennsylvania have been employing the exclusionary rule all these years to deter police corruption. We flatly reject this notion. We have no reason to believe that police officers or district justices in the Commonwealth of Pennsylvania do not engage in "good faith" in carrying out their duties. What is significant, however, is that our Constitution has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause under Article 1, Section 8.
>
> *         *         *
>
> Thus, the exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article I, Section 8, namely to safeguard both the privacy of Pennsylvania's citizens and the fundamental requirement that warrants shall only be

issued upon probable cause. [*Commonwealth v.*] *Melilli*, [555 A.2d 1254 (Pa. 1983)]. As this Court explained in *Commonwealth v. Miller*, [518 A.2d 1187 (Pa. 1986)]:

> The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. *Commonwealth v. Chandler* [477 A.2d 851 (Pa. 1984)]. It is designed to protect us from unwarranted and even vindictive incursions upon our privacy. It insulates from dictatorial and tyrannical rule by the state, and preserves the concept of democracy that assures the freedom of its citizens. This concept is second to none in its importance in delineating the dignity of the individual living in a free society.

*Edmunds*, 586 A.2d at 899 (citing *Miller*, 518 A.2d at 127). Accordingly, this Court in *Edmunds* emphasized that "the purpose underlying the exclusionary rule in this Commonwealth is quite distinct from the purpose underlying the exclusionary rule under the [Fourth] Amendment." *Id.* at 897. Given this distinct difference in purpose under Article 1, Section 8, we thus concluded in *Edmunds* that recognition of a good faith exception to the exclusionary rule would "virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years." *Id.* at 899.

In *Commonwealth v. Johnson*, 86 A.3d 182 (Pa. 2014), this Court reaffirmed our decision in *Edmunds* that no good faith exception to the exclusionary rule exists under Pennsylvania law. In *Johnson*, a state trooper stopped a vehicle in response to a radio communication about a possible drug transaction, and the appellee, Richard Johnson, was a passenger in that vehicle. When the trooper ran Johnson's name, he was informed that there was an active warrant for his arrest. The trooper placed Johnson under arrest and performed a pat-down search, at which time he discovered thirty-seven packets of heroin, two cellular phones, and more than $1600 in cash on his person. At the police barracks, Johnson admitted that he sold drugs. After the

appellee's arrest and interrogation, the arresting state trooper was informed that the arrest warrant notification he received had been in error. In fact, Johnson had been served with the warrant nine days before the trooper's interaction with him. Nonetheless, Johnson was charged with multiple drug-related crimes. He moved to suppress both the evidence recovered during the search incident to arrest as well as his statements to the trooper. The trial court granted Johnson's suppression motion and the Superior Court affirmed.

On appeal to this Court, the Commonwealth argued that suppression was not required because the officer reasonably and properly relied on the information provided to him regarding an active arrest warrant. The Commonwealth urged that our rejection of a good faith exception under the circumstances presented in *Edmunds*, which involved an erroneous ruling by the issuing magistrate, did not require the exclusion of evidence in other circumstances, such as when a police officer acts on a genuine, but mistaken, belief that he is lawfully authorized to arrest a person. Id. at 186.

This Court disagreed, concluding that the case did not present "any meaningful distinction of *Edmunds* in constitutional terms," as the only difference was the source of the mistake (in *Edmunds*, the judiciary (the issuing magistrate), and here the executive branch ("the person responsible for purging executed warrants in a timely fashion")). *Id.* at 189–90. We further noted that the fact that *Edmunds* involved a search warrant while this case involved an arrest warrant was equally irrelevant. *Id.* Finally, and most importantly, we insisted that whether the mistake was made in good or bad faith was entirely irrelevant to the constitutional analysis, reminding that our rejection of a good faith exception in *Edmunds* "turned on a determination that, under Article I, Section 8, the exclusionary rule in Pennsylvania serves other values besides deterrence; it also vindicates an individual's right to privacy." Id. at 188. "From the perspective of the

citizen whose rights are at stake, an invasion of privacy, in good faith or bad, is equally as intrusive." *Id.* at 189 (quoting *Edmunds*, 586 A.2d at 901).

In *Commonwealth v. Clark*, 602 A.2d 1323 (Pa. Super. 1992), the Superior Court decided a case raising an issue substantially similar to the one presented here, namely whether suppression is required where the search warrant is defective because, unbeknownst to the affiant, the affidavit in support of the warrant contained false information provided by a third party. In *Clark*, the affidavit in support of probable cause stated that a confidential informant had reported to the affiant that he had, within the previous forty-eight hours, observed Clark take orders for cocaine sales at a housing project, drive his Pontiac Ventura to his residence, go inside the residence and then leave within a couple of minutes with the drugs. *Id.* at 1326. The warrant issued and its execution led to the discovery of drugs and guns in Clark's home. *Id.* at 1324-25. At a hearing on his motion to suppress, Clark presented documentary and testimonial evidence that directly contradicted the informant's statements, including a receipt establishing that Clark could not have driven his Pontiac Ventura within forty-eight hours of the date listed on the affidavit in support of probable cause. Specifically, the receipt showed that the car had been left for repairs at an auto service station three days before the date on which the police filed the application for the warrant, and that payment for the repairs and return of the vehicle took place the day after the issuance of the warrant. *Id.* at 1325. Clark and his father both testified that Clark had not driven the vehicle at all for the two weeks preceding the date of the issuance in the warrant. *Id.* The trial court granted the motion to suppress.

In a plurality decision, the Superior Court affirmed. The lead opinion, authored by Judge Sydney Hoffman, reasoned that pursuant to *Edmunds*, Article 1, Section 8 does not permit any good faith exceptions to the exclusionary rule. *Id.* at 1327. Judge

Hoffman determined that "*Edmunds* requires us to suppress the evidence seized under the instant invalid search warrant, notwithstanding the good faith with which the officer may have relied on the CI's information." *Id.* Judge Hoffman's opinion, however, lacked the force of precedent, as the two other members of the panel did not join in its reasoning.[7] *Id.* at 1328.

Seventeen years later, the Superior Court addressed the same issue in *Antoszyk I.* There, a confidential informant told a detective that Antoszyk was a "bulk dealer" of marijuana, that he had observed large amounts of marijuana in Antoszyk's house, and that he was aware that Antoszyk had been arrested on drug charges in the past. *Id.* at 976-77. Based on this information, the detective sought and was granted a warrant to search Antoszyk's home. Execution of the warrant led to the recovery of ten pounds of marijuana, and Antoszyk was arrested and charged with multiple drug-related offenses. At a suppression hearing, the informant admitted that although he knew Antoszyk was a user of marijuana, his statements to the detective about large-scale drug dealing were fabrications, made up in the hopes that Antoszyk would stop bothering him about a three-year-old drug debt that the informant owed to Antoszyk. *Id.* at 977. Relying on *Clark*, the suppression court granted Antoszyk's motion to suppress.

On appeal, the Commonwealth contended that the suppression court erred in relying on *Clark*, as it was not binding precedent.[8] The Superior Court, while recognizing that *Clark* lacked precedential value, adopted its reasoning:

---

[7] Judge James R. Cavanaugh filed a one-sentence concurring opinion explaining that he would affirm the suppression court's ruling on the grounds that the police should have conducted an independent investigation of the confidential informant's claims. Judge Zoran Popovich concurred in the result.

[8] The Commonwealth argued that the Superior Court was bound by its prior decision in *Commonwealth v. Bradshaw*, 434 A.2d 181 (Pa. Super. 1981), which likewise involved the issuance of a search warrant based upon a confidential informant's statements that were proven to be false after the execution of the warrant. In *Bradshaw*, the Superior (continued…)

We thus hold that Judge Hoffman's lead opinion in *Clark* []
properly reflects the law regarding material misstatements in
an affidavit in support of probable cause, and we reject the
Commonwealth's assertion that we are limited by the federal
caselaw [sic] interpreting the United States Constitution.
Accordingly, we conclude that, after *Edmunds*, our courts
must analyze [Article 1, Section 8] issues not with the
purpose of deterring police misconduct, but on whether the
misstatements in the affidavit resulted in a violation of the
defendant's privacy rights.

*Id.* at 982-83.

This Court granted allowance of appeal from the Superior Court's decision in

*Antoszyk I*, but we were unable to reach a consensus, resulting in an evenly divided

Court. *See Commonwealth v. Antoszyk*, 38 A.3d 816 (Pa. 2012) (affirmed per curiam)

("*Antoszyk II*"). Justices Saylor, Baer and Todd voted to affirm the Superior Court's

order, while Chief Justice Castille and Justices McCaffery and Eakin supported reversal.

Justice Eakin authored the only opinion. Therein, Justice Eakin argued that the facts

did not present a "good faith exception" case. *Id.* at 818. According to Justice Eakin,

this Court has held that "[p]robable cause exists where the facts and circumstances

within the affiant's knowledge and of which he has reasonably trustworthy information

are sufficient in themselves to warrant a man of reasonable caution in the belief that a

search should be conducted." *Id.* (quoting *Commonwealth v. Jones*, 988 A.2d 649, 655

(Pa. 2010)). Justice Eakin noted that the affiant had made no deliberate or knowing

---

(…continued)
Court held that "permitting challenges to an informant's veracity is inconsistent with the
traditional conception of the exclusionary rule as a balance between … deterrence of
police misconduct, on one hand, and conviction of guilty persons, on the other."
*Bradshaw*, 434 A.2d at 183. In *Antoszyk I*, the Superior Court held that its decision in
*Bradshaw* had been overruled by *Edmunds*, stating that "although the *Edmunds* Court
did not address [the circumstances of] *Bradshaw* specifically, it emphatically disclaimed
any consideration that Article 1, Section 8 … adopts the federal standard of deterring
police conduct." *Antoszyk I*, 985 A.2d at 980.

misstatements of fact, and, more importantly, the affidavit did not contain any untrue statements of fact whatsoever. *Id.* ("The affidavit did not say the informant was in the house at a certain time—it said the informant **said** he was in the house then, and gave credible reasons why the affiant believed the informant. Whether the informant was ever really in the house or not is immaterial—the affidavit did not misspeak.") (emphasis in original). Because there were no material misstatements in the affidavit, Justice Eakin was of the view that there was no constitutional violation whatsoever, and thus no need for a good faith exception from the exclusionary rule. *Id.* at 820. ("This is not a good faith exception case. This is not an *Edmunds* case. This is not a material misrepresentation case."). Justice Eakin concluded that an informant's veracity is simply "not in issue at a suppression hearing," and therefore, it is immaterial if the affiant is misled by the source of the information set forth in the affidavit. *Id.* at 818.

In the present case, the Commonwealth urges this Court to reject the constitutional analyses in *Clark* and *Antoszyk I* and to adopt instead Justice Eakin's approach in *Antoszyk II*. In its appellate brief, the Commonwealth states that this is not a case like *Edmunds*, in which the magisterial district judge erroneously determines that probable cause exists, or a common suppression case where the affiant/police officer intentionally or recklessly misstates material facts in the affidavit in support of probable cause. Commonwealth's Brief at 36. As such, the Commonwealth insists that "this case is not the 'good faith' exception case as envisioned by *Edmunds*." *Id.* To the contrary, the Commonwealth contends that because the affiant (Detective Fetrow) accurately reported what Shifflet told him, probable cause existed here to support the magisterial district judge's issuance of the search warrant. *Id.* at 34. The Commonwealth emphasizes that Detective Fetrow acted in good faith, and that his decision to place trust in Shifflet's allegations regarding Hopkins' participation in the

burglary was reasonable, since Shifflet was "not a paid, unknown tipster but instead an identified eyewitness to a crime who voluntarily reported his observations to the police." *Id.* at 41. As such, the Commonwealth asserts that under Pennsylvania law, Shifflet's trustworthiness, as an "average citizen" offering information to the police, may be presumed. *Id.* (citing *Commonwealth v. Sudler*, 436 A.2d 1376, 1381 (Pa. 1981)). In conclusion, the Commonwealth repeats (albeit without attribution) Justice Eakin's determination that "[t]his is not a good faith exception case. This is not an *Edmunds* case. This is not a material misrepresentation case." *Id.* at 44.

Inherent in the argument of the Commonwealth (and Justice Eakin's plurality opinion) is the premise that the officer attested in good faith. In *Edmunds*, this Court made clear that a determination of whether the safeguards guaranteed by Article 1, Section 8 of the Pennsylvania Constitution have been afforded to citizens accused of crimes cannot be based upon a focus on whether the conduct of the affiant was in good or bad faith. In *Johnson*, we reaffirmed our refusal to recognize a good faith exception to the exclusionary rule in a case that did not involve an affiant at all (but rather an invalid arrest warrant).[9] Instead, in both *Edmunds* and *Johnson*, we have emphasized, in the strongest possible terms, that the focus under Article 1, Section 8 must at all times be on protecting the privacy of individuals, and that even an inadvertent violation of a citizen's right to privacy may require application of the exclusionary rule:

> [T]he right to be free from unreasonable searches and seizures contained in Article I, Section 8 of the Pennsylvania Constitution is tied into the implicit right to privacy.
>
> *    *    ** *
>
> Citizens in this Commonwealth possess such rights, even where a police officer in "good faith" carrying out his or her

---

[9] We note that the Commonwealth makes no mention of *Johnson* in its appellate brief.

duties inadvertently invades the privacy or circumvents the strictures of probable cause.

*Edmunds*, 586 A.2d at 898-99 (quoting *Commonwealth v. DeJohn*, 403 A.2d 1283, 1291 (Pa. 1979)); *see also Johnson*, 86 A.3d at 189 ("From the perspective of the citizen whose rights are at stake, an invasion of privacy, in good faith or bad, is equally as intrusive.").[10]

---

[10]   The Opinion in Support of Reversal ("OISR") contends that this is not a good faith exception case along the lines of *Edmunds* and *Johnson*, and it favors the application of the standard articulated in *Franks v. Delaware*, 438 U.S. 154 (1978), in the present scenario. The conclusion that the *Franks* standard would resolve the issue presented is faulty precisely because of the difference between federal Fourth Amendment jurisprudence and the law as it has developed under Article 1, Section 8.

As explained above, Article 1, Section 8 provides greater protection than its federal counterpart; as such, it makes little sense to structure an analysis of the issue presented here around a federal standard. Indeed, this Court has held, contrary to the standard announced in *Franks*, that as a matter of state law, a defendant is entitled to challenge the veracity of statements in an affidavit of probable cause "without conditioning that right upon a 'substantial preliminary showing' of the potential falsity of those facts." *Commonwealth v. Miller*, 518 A.2d 1187, 1194-95 (Pa. 1986). *Miller* rejected the *Franks* test as not representative of the rights afforded citizens under the Pennsylvania Constitution. The *Franks* procedures are not reflective of our Article I, Section 8 jurisprudence and they are thus inapplicable to the case before us.

Furthermore, contrary to the suggestion of the OISR, the decision in *Miller* is not fundamentally at odds with an affirmance of the Superior Court's decision in the present appeal. *Miller* addressed an entirely different issue from the one at issue here, namely whether the identity of a confidential informant may be revealed to test the truthfulness of the police officer's representations in the affidavit of probable cause supporting the issuance of a warrant. *Id.* at 1195. The Court in *Miller* concluded that the police officer's veracity could be challenged at a suppression hearing, even absent a preliminary showing of the existence of misrepresentations, but that this departure from federal law did not necessitate the disclosure of the identity of the confidential informant where it is established that said disclosure would jeopardize his or her safety. *Id.* at 1194-95. This Court acknowledged that its ruling might on occasion permit a perjured officer's sworn misrepresentations to go undetected, but held that this potentiality was outweighed by the likelihood of injury flowing from the disclosure of the identity of confidential informants (and reprisals relating thereto). *Id.* at 1195.

Contrary to the OISR's contention, this Court in *Miller* did not rule that a police officer's "good faith" mistaken reliance on a confidential informant's veracity constituted grounds to invade a citizen's Article I, Section 8 privacy rights. To the extent, if any, that
(continued…)

In the present case, whether Detective Fetrow acted in good faith when reporting Shifflet's misstatements in the affidavit in support of probable cause is immaterial, as his decision to sign and submit an affidavit for judicial review containing material misstatements of fact resulted, without any question, in a clear invasion of Hopkins' right to privacy under Article 1, Section 8 of the Pennsylvania Constitution. The police entered and searched Hopkins' home based upon a warrant issued solely on admittedly false information. Apart from Shifflet's lies, Detective Fetrow's affidavit contained no independent basis for a finding of probable cause. Once the suppression court made this determination, its only proper course was to grant Hopkins' motion to suppress. The search warrant was invalid and the proper remedy under the exclusionary rule was suppression of the evidence seized.

Even assuming that Detective Fetrow acted entirely in good faith, his conduct invaded Hopkins' privacy. As a result, contrary to the Commonwealth's insistence, this is a good faith exception case, an *Edmunds* case, and a material misrepresentation case. For these reasons, the order of the Superior Court should be affirmed.

Justices Baer and Dougherty join this opinion in support of affirmance.

---

(…continued)
the decision in *Miller* could be so interpreted, it was implicitly overruled by our subsequent decision in *Edmunds*, as explained at length herein.