IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 377 C.D. 2024 |
| | : | |
| Keith Jeffrey Alcibiade, | : | Submitted: April 8, 2025 |
| Appellant | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                              FILED: May 19, 2025

Keith Jeffery Alcibiade (Appellant) appeals from the judgment of sentence entered in the Armstong County Court of Common Pleas (trial court) on February 29, 2024, following his summary conviction of violating 34 Pa. C.S. § 2308(a)(8) and 34 Pa. C.S. § 2307(a)[1] of the Game and Wildlife Code, 34 Pa. C.S. §§

---

[1] Section 2308, titled Unlawful Devices and Methods, provides in relevant part:

> **(a) General rule**.--Except as otherwise provided in this title, it is unlawful for any person to hunt or aid, abet, assist or conspire to hunt any game or wildlife through the use of:
>
>                \*    \*    \*
>
> (8) Any artificial or natural bait, hay, grain, fruit, nut, salt, chemical, mineral or other food as an enticement for game or wildlife, regardless of kind and quantity, or take advantage of any such area or food or bait prior to 30 days after the removal of such material and its residue. . . .

**(Footnote continued on next page…)**

101-2965 (Code).  On appeal, Appellant challenges the sufficiency of the evidence supporting his conviction and the trial court's denial of his motions to suppress evidence.  We affirm.

## Background

The relevant facts and procedural history of this case are as follows.  On October 2 and October 4, 2022, Appellant poured deer feed on the ground at the edge of a field located on a 350-acre rural property in Armstong County known as "Dunmire."  The Dunmire property is owned by the family business operated by Michael Snyder, who uses the land for private hunting (Property).  Appellant worked as a caretaker for the Property and his duties included maintaining tree stands and game cameras and feeding the deer with minerals to stimulate antler growth.  Appellant killed a buck on the Property on October 5, 2022, using a compound archery bow.  After an investigation including the execution of search warrants on Appellant's house and cell phone, the Commonwealth charged him with the above-stated summary offenses.[2]

---

34 Pa. C.S. § 2308(a)(8).

Section 2307(a), titled Unlawful Taking or Possession of Game or Wildlife, reads in pertinent part as follows:

> **(a) General rule**.--It is unlawful for any person to aid, abet, attempt or conspire to hunt for or take or possess, use, transport or conceal any game or wildlife unlawfully taken or not properly marked or any part thereof, or to hunt for, trap, take, kill, transport, conceal, possess or use any game or wildlife contrary to the provisions of this title.

34 Pa. C.S. § 2307(a).

[2] While the Commonwealth initially charged Appellant with a misdemeanor offense, it withdrew a tampering or fabricating evidence charge and moved for the case to be heard at a summary trial.

On July 11, 2023, Appellant filed an omnibus pretrial motion seeking to suppress certain evidence obtained by the Commonwealth during its investigation. The Commonwealth filed a motion to quash the suppression motion, which the trial court granted because the case involved summary charges only.[3] The trial court stated in its order that any pretrial issues would be disposed of during the summary trial.

The trial court held a two-day trial on September 21 and December 19, 2023. At the outset, defense counsel made oral motions seeking to suppress evidence of all trail camera photographs taken at the Property, as well as the evidence seized from Appellant's residence and cell phone. (Reproduced Record (R.R.) at 348a-52a.) Counsel maintained the Commonwealth withheld evidence from the defense in the form of additional trail camera photographs, depriving him of the opportunity to review them for exculpatory evidence, thereby committing a *Brady*[4] violation. The Commonwealth responded that it provided the defense with all the evidence it received from the Pennsylvania Game Commission (Commission), which was saved to a flash drive prepared by Christopher Bence, the state game warden (Officer Bence), and that all of the evidence it intended to introduce at trial was disclosed. (R.R. at 349a-50a.) Defense counsel also challenged the search warrants issued for Appellant's residence and cell phone by arguing the affidavits of probable cause failed to provide a factual

---

[3] The Pennsylvania Rules of Criminal Procedure governing omnibus pretrial motions are not applicable in summary proceedings. *See Commonwealth v. Marcus*, 690 A.2d 842, 845 n.4 (Pa. Cmwlth. 1997).

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

basis for the Commonwealth's averment that he had committed a crime.[5] The trial court took the suppression motions under advisement and proceeded to trial.

---

[5] The affidavits of probable cause were prepared by Officer Bence, and the affidavit relating to Appellant's home read in relevant part:

> 2. The following information was given to me by a reputable confidential informant. The confidential informant reported to me that [Appellant] had unlawfully killed, possessed and transported an 8 point antlered white-tailed deer.
>
> 3. Evidence was found that [Appellant] unlawfully harvested a white-tailed deer contrary to provisions of Pa.C.S.#34 (Title #34 GAME AND WILDLIFE CODE).
>
> 4. Photos and texts were sent from [Appellant's] phone [] to Aaron Klingensmith [] and Michael D. Snyder [] of [Appellant] in hunting attire posing with the aforementioned dead deer. [Appellant] also showed Klingensmith a video on his phone of [Appellant] possessing the aforementioned dead deer.
>
> 5. Evidence shows the aforementioned deer was taken to Solinger's taxidermy (752 Girty Rd, Shelocta, Pa. 15774). Solinger's records show that on October 9th, 2022, [Appellant] contacted Solinger from his phone to schedule a drop off time. Solinger's records indicate that on October 23rd, 2022, [Appellant] dropped off the head and hide from the aforementioned deer and gave a monetary cash deposit for taxidermy.
>
> 6. [Appellant] contacted Solinger's via his phone to notify him he wanted to pick up the antlers until the mount was ready to be assembled. The antlers were picked up from Solinger's taxidermy by Sean P. Lichanec [] between the dates of October 24th 2022, and November 9th 2022. Solinger called [Appellant] on his phone to verify Lichanec was in fact picking the antlers up for [Appellant]. Arrangements were made by Solinger for [Appellant] to retain the antlers and bring them back when he was prepared to assemble the complete mount.
>
> 7. Based on the statements and observations above, [Officer] Bence believes there is sufficient probable cause that there is evidence of the unlawful taking [of the] aforementioned 8 point white-tailed deer in [Appellant's] residence, vehicle and outbuildings. [Officer] Bence also

**(Footnote continued on next page…)**

4

believes there will be evidence of the unlawful taking on [Appellant's] phone in the form of time, date and location stamped photos, text messages, call logs and phone records, since it is known that [Appellant] communicated about and sent pictures of the deer on said phone. Since a reasonable person would store antlers, meat or other evidence of the big game in their house it would be reasonable to think there is evidence of such contraband in the subject's house. Hunting implements, weapons, equipment and gear used in the commission of the crime would also be stored in a hunter's vehicle or residence. Through my training and experience it is common practice for successful hunters to retain antlers of harvested deer at their residence for generations.

(R.R. at 299a) (some capitalization omitted).

The affidavit of probable cause relating to Appellant's cell phone read in pertinent part:

2. During the lawful execution of a search warrant on [Appellant's] residence, concerning the unlawful taking of game or wildlife specifically whitetail deer taken contrary to the provisions of Title 34 Pa.C.S. to include through the use of natural or artificial bait in October 2022. [Appellant's] cell phone was seized after your affiant discovered that the phone was used to communicate, in October 2022, with a third party regarding the possession and location of the unlawfully taken or possessed deer.

3. Specifically, your affiant learned that [Appellant] using the aforementioned phone on this warrant application communicated with Solinger who is a taxidermist regarding dropping off and picking up the unlawfully taken deer, [Appellant] even made arrangements for an acquaintance to be the person to pick up the antlers pending preparation of other parts for the taxidermy work, all during October 2022. In addition [Appellant] sent text messages and photographs from this device to another party by the name of Snyder depicting photographs of [Appellant] in possession of the unlawful whitetail deer during the month of October 2022. Forensic evidence would also show location of the device at the time of the crime.

4. It is believed that the text, call or photographic evidence as well as location data is contained on this device and the aforementioned facts complete the nexus from this particular cellular device to the unlawful taking or possession of aforementioned whitetail deer from approximately 10/05/2022-11/18/22.

**(Footnote continued on next page…)**

5

The Commonwealth presented the testimony of Officer Bence who stated that he had been a game warden for 6 years and had issued approximately 100 Code violations. He recounted that on October 5, 2022, he responded to a report of a baiting incident on the Property. Officer Bence's investigation included reviewing trail camera photographs depicting Appellant, while wearing camouflage and carrying a bow, place minerals used for attracting deer in the same location on the Property on October 2 and October 4, 2022. Officer Bence testified that deer went to that location because of the bait, and that on October 5, 2002, at 7:12 p.m., the photographs showed a "deer entering the frame on the right, which is an eight-point, antlered, whitetail deer [with a] distinct nodule on the left G2 which makes this deer quite distinguishable." (R.R. at 363a.) Another photograph showed Appellant, wearing the same camouflage and carrying the same bow, at that location five minutes later at 7:17 p.m., and again at 7:51 p.m. Officer Bence testified that he found a tree stand in the woods of the Property located about 40 yards from the bait site. Other photographs showed a dead deer near the bait site and Appellant "holding that eight-point whitetail deer with the nodule on the left G2 . . . [with] blood stains on its fur and a wound on its left side[.]" (R.R. at 374a.) Officer Bence explained that the eight-point buck is a trophy class deer because of its large antlers.

Officer Bence indicated that in executing the search warrant for Appellant's home, he seized several parts of whitetail deer, and the same backpack, shirt, boots, and bow Appellant was shown carrying in the trail camera photographs on the day of the incident. A deer skull was also seized during the search of Appellant's residence, and a records search showed that he did not file any hunting tag or other report indicating his lawful possession of the skull. (R.R. at 382a.) Officer Bence

(R.R. at 304a) (some capitalization omitted).

6

further testified that the law office of Appellant's attorney was searched and officers seized antlers from the eight-point, whitetail deer with the nodule on the left G-2 from that office.

With respect to the text messages recovered from Appellant's cell phone, Officer Bence testified Appellant sent a picture of himself holding a dead buck to his father accompanied by a message reading: "Just pressure washed away the evidence. Still at the shop. I just got to figure out how to get it snuck out of here with no one knowing." (R.R. at 377a-78a.) Appellant also texted his co-worker Aaron Klingensmith, stating: "I didn't shoot that deer at Dunmire. I was [] with you. I got it out at the back waters." (R.R. at 388a.) Officer Bence testified that, based on his training and experience, he believed that this text message was a lie that Appellant told "to send [him] in the wrong direction looking for a deer that is not at that bait site." (R.R. at 390a.)

On cross-examination, Officer Bence testified that Mr. Snyder provided him with trail camera photographs taken on the Property and that he reviewed thousands of photographs during his investigation. He indicated that he did not give all of these photographs to the District Attorney's office because "there were [] several thousand, if not more. Once I was able to ascertain all of the pictures from this one camera that showed the location where we have the deer in question and the suspect, then those were what our case used." (R.R. at 416a.) Officer Bence indicated that he reviewed footage from other cameras to see if Appellant was at any other location on the Property during the relevant time period and testified that Appellant did not appear in any of the photographs he reviewed.

Mr. Snyder explained that the Property is part of a 3,500-acre hunting reserve and that he terminated Appellant's employment when hunting season began

7

because he was dissatisfied with his management of the Property. Mr. Snyder contacted the Commission after he reviewed photographs captured by trail cameras showing Appellant's apparent baiting of a deer. (R.R. at 519a-20a.)[6]

At the conclusion of trial, the court entered its verdict convicting Appellant of violating Sections 2308(a)(8) and 2307(a) of the Code and issued an order denying Appellant's motions to suppress. On February 29, 2024, the trial court sentenced Appellant to pay a fine of $800.00, plus costs of prosecution. This appeal followed.[7] The trial court filed an opinion on April 9, 2024. *See* Pa.R.A.P. 1925(a).

## Discussion

On appeal,[8] Appellant challenges the sufficiency of the evidence supporting his conviction and the trial court's denial of his motions to suppress the evidence. We will address each argument in turn.

### A. Sufficiency of the Evidence

Appellant first contends the evidence presented at trial was insufficient to sustain his conviction because the Commonwealth failed to prove that he hunted over a baited area.[9] He argues that the evidence instead shows the Commonwealth does not

---

[6] Appellant did not testify in his defense at trial.

[7] Although Appellant filed his notice of appeal in the Superior Court, that Court granted the Commonwealth's application to transfer. *See Dickerson v. Commonwealth*, 587 A.2d 379, 381 (Pa. Cmwlth. 1991) (stating Commonwealth Court has jurisdiction over appeals from criminal prosecutions brought pursuant to the Code).

[8] "On appeal from a summary conviction, where the trial court has taken additional evidence at a *de novo* hearing, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law." *Commonwealth v. Redovan*, 227 A.3d 453, 456 n.2 (Pa. Cmwlth. 2020).

[9] "Our standard of review when evaluating the sufficiency of the evidence in a conviction for a summary offense is whether, viewing all the evidence admitted at trial, together with all reasonable **(Footnote continued on next page…)**

8

know where he was hunting on the large 3,500-acre reserve. Appellant maintains that, per the "reasonable hunter" standard set forth in *Commonwealth v. Sellinger*, 763 A.2d 525 (Pa. Cmwlth. 2000), he was not hunting when he walked through the baited area, as the trail camera photographs show that he carried an **unloaded** compound bow. Appellant additionally takes issue with the veracity of the testimony of Officer Bence and Mr. Snyder, which he characterizes as "perjury." (Appellant's Br. at 28-33, 66-67.)

As previously noted, under Section 2308(a)(8) of the Code,

> it is unlawful for any person to hunt . . . any game or wildlife through the use of . . . [a]ny artificial or natural bait, hay, grain, fruit, nut, salt, chemical, mineral or other food as an enticement for game or wildlife, regardless of kind and quantity, or take advantage of any such area or food or bait prior to 30 days after the removal of such material and its residue. . . .

34 Pa. C.S. § 2308(a)(8). In turn, Section 2307(a) provides that it "is unlawful for any person to . . . take or possess, use, transport or conceal any game or wildlife unlawfully taken . . . or to hunt for, trap, take, kill, transport, conceal, possess or use any game or wildlife contrary to the provisions of this title." 34 Pa. C.S. § 2307(a).

Instantly, Appellant relies on this Court's decision in *Sellinger* to contend that he was not hunting in the baited area because he was carrying an unloaded weapon. The *Sellinger* case involved a group of hunters who had been observed close to game feeders filled with shelled corn. The trial court found the hunters guilty of hunting over bait because the group knew or should have known that they were violating the Code.

---

inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Prentiss*, 315 A.3d 255, 261 n.3 (Pa. Cmwlth. 2024).

On appeal, this Court adopted the "reasonable hunter" standard and held that "a violation of 34 Pa. C.S. § 2308(a)(8) occurs regardless of whether the hunter actually intends to take advantage of the bait if he continues to hunt in an area after he knows or has reason to know that it is a baited area; even if he proceeds to hunt by walking away from the bait rather than toward it, so long as he continues to hunt." *Sellinger*, 763 A.2d at 527. The Court qualified this statement by stating: "However, a hunter who is aware of the existence of bait and unloads his weapon is no longer hunting." *Id.*

Here, the trial court found the evidence presented by the Commonwealth at trial was more than sufficient to sustain Appellant's conviction of the Code violations. It explained its rationale as follows:

> The evidence that [Appellant] hunted illegally using bait is overwhelming. To begin with, I carefully examined the photographs of the antlers of the living buck, the antlers of the dead buck, and the actual antlers which were entered into evidence. There is no question in my mind that these are all the same antlers from the same buck.

> In addition, the timestamps on the various photographs put together a tight timeline. The buck is alive, standing near the food pile at 7:12 p.m. Five minutes later [Appellant] is seen on the same game camera. At 7:36 p.m. [Appellant] is texting his father. The earliest photograph of the recently deceased buck was taken at 8:06 p.m. by [Appellant's] phone.

> [Appellant's] reliance on *Commonwealth v. Sellinger* is misplaced. In *Sellinger*, the Commonwealth sought to prove that the defendant was knowingly hunting near bait using evidence that the defendant's gun was loaded. The Commonwealth Court held that mere possession of a loaded weapon is not sufficient to prove the element of hunting beyond a reasonable doubt.

10

> **There is no such mystery in this case. The photos show a living buck. Then a short time later the photos show the same buck dead, being held up for display by [Appellant], dressed in hunting clothes**. It is not necessary to speculate whether [Appellant] knew there was bait on the ground: he is on camera putting the bait there himself. Similarly there is no need to speculate whether [Appellant] was "hunting"; he was there when the deer was killed and he posed for pictures with his quarry.

(R.R. at 931a-33a) (emphasis added).

Viewing the evidence in the light most favorable to the Commonwealth, *see Prentiss*, 315 A.3d at 261, we agree with the trial court's determination that the evidence clearly established Appellant knew he was hunting in a baited area and unlawfully took wildlife through the use of bait. Trail photographs leading up to the buck's killing show Appellant poured minerals in the subject area on two separate occasions on the days immediately before the incident, for the purpose of drawing deer to the site, and then essentially stalked a trophy-size deer as it fed there.

With respect to Appellant's claim based on *Sellinger* that he was not hunting in the baited area because his bow was unloaded, we disagree. This argument wholly ignores the fact that **Appellant himself** spread minerals in an area he was extremely familiar with, as he was caretaker for the Property and **managed the deer**. This is not a case where an unsuspecting hunter on unfamiliar land inadvertently comes upon a baited area and must take reasonable precautions accordingly.

As to Appellant's claim that the Commonwealth's witnesses committed "perjury" at trial, we conclude that he is essentially attempting to relitigate the trial court's credibility determinations on appeal. We decline to disturb the court's findings on appeal because as the fact finder in this case, it had the exclusive authority to weigh the evidence and to make credibility determinations based on its acceptance of all, part,

11

or none of the evidence presented. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1258 (Pa. Cmwlth. 2002).

In sum, the trial court properly denied Appellant's challenge to the sufficiency of the evidence supporting his conviction of Sections 2308(a)(8) and 2307(a) of the Code for his baiting and taking possession of the trophy-sized buck.

## B. Motions to Suppress Evidence

Appellant next argues the trial court erred in denying his motions to suppress the trail camera photographs and the evidence seized from his home and cell phone pursuant to the invalidly issued search warrants which lacked probable cause.[10]

## Trail Camera Photographs

Appellant contends the trial court should have suppressed all trail camera photographs because the Commonwealth refused to provide the defense with the thousands of photographs Officer Bence received from Mr. Snyder during his investigation. According to Appellant, this withholding of photographs constituted a *Brady* violation because it deprived him of the opportunity to review the exculpatory evidence present therein. (Appellant's Br. at 34, 69.)

It is well settled that "*Brady* imposes upon the Commonwealth an affirmative duty to disclose to the defendant all favorable evidence material to guilt or punishment, even in the absence of a request by the defendant for the same." *Commonwealth v. Thomas*, 323 A.3d 611, 638 (Pa. 2024). To establish a *Brady* violation, a defendant must prove: "first, that the evidence at issue was favorable to the defendant; second, that the prosecution suppressed the evidence, either willfully or

---

[10] We note that although Appellant references a request for the Commonwealth to produce body camera footage recorded by Commission officers during their investigation in his brief, counsel did not raise this claim during trial and the trial court did not address the same in its opinion. (*See* Appellant's Br. at 36.) This unpreserved argument is therefore waived. Pa.R.A.P. 302(a).

inadvertently and finally, that the evidence was material." *Id.* "Evidence is material for *Brady* purposes when its absence caused prejudice." *Id.* "This is a **high bar**, as the **mere possibility** that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the *Brady* context." *Id.* at 639 (emphasis added). Additionally, "[t]he prosecution's duty under *Brady* is limited as the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Commonwealth v. Conforti*, 303 A.3d 715, 725 (Pa. 2023).

Instantly, the crux of Appellant's *Brady* claim is that there is a possibility that exculpatory evidence is present in the trail camera photographs taken on other areas of the Property during the relevant time period. Appellant does not discuss with specificity the evidence he expects to discover, identify the particular area of the Property where the alleged evidence can be found, nor does he explain how discovery of the evidence would have impacted the outcome of his case in light of the overwhelming evidence of his guilt.

Additionally, the Commonwealth averred at trial that had it produced all evidence it had received from Officer Bence in the form of a flash drive and it disclosed everything it intended to introduce at trial to the defense. While Officer Bence acknowledged on cross-examination that he had reviewed additional trail camera photographs, he unequivocally stated that he did not find Appellant's image in any of the pictures and indicated that he did not provide every photograph he reviewed because of the sheer volume of irrelevant material contained therein. Accordingly, we conclude Appellant failed to meet the high bar of demonstrating the Commonwealth suppressed the evidence upon which his claim is based and his argument to the contrary merits no relief.

**<u>Validity of Search Warrants</u>**

Lastly, Appellant contends that all evidence seized from his home and cell phone should have been suppressed because the affidavits of probable cause provided no factual basis to show he committed a crime.[11]  He additionally maintains that his cell phone would not have been seized but for the execution of the invalid search warrant on his residence.  (Appellant's Br. at 71-74.)

The Fourth Amendment to the United States Constitution[12] and article I, section 8 of the Pennsylvania Constitution[13] protect citizens from unreasonable searches and seizures.  *Commonwealth v. Hopkins*, 164 A.3d 1133, 1136 (Pa. 2017).  In order to be constitutionally sound, warrants must: "(1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime."  *Green*, 265 A.3d at 549.  Probable cause is determined based on the totality of the circumstances and "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay

---

[11] In reviewing a trial court's denial of a suppression motion our standard of review is *de novo* and is limited to determining whether the court's factual findings are supported by the record and whether its legal conclusions drawn from these facts are correct. *Commonwealth v. Green*, 265 A.3d 541, 550 (Pa. 2021).  "Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." *Id.*

[12] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

[13] Article I, Section 8 provides that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."  Pa. Const. art. I, § 8.

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Johnson*, 240 A.3d 575, 585 (Pa. 2020). "A reviewing court's duty, in turn, is merely to ensure the issuing authority had a substantial basis for concluding that probable cause existed." *Id.* "In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." *Id.*

Here, the affidavits of probable cause attached to the search warrant applications for Appellant's residence and cell phone indicated that a confidential informant notified the Commission that Appellant unlawfully killed, possessed, and transported an 8-point antlered white tail deer in violation of the Code. Corroborating evidence in the form of text messages and pictures of Appellant talking about shooting a deer and posing with the dead buck were also provided to the Commission. (R.R. at 299a.) Officer Bence further determined Appellant took the deer remains to Solinger's Taxidermy, which confirmed Appellant sent a deer for processing and arranged for its pickup. Considering the totality of the circumstances viewed in a common-sense manner, these facts as alleged in the affidavits show that there was probable cause Appellant violated the Code and that evidence proving this would be recovered from his home and cell phone. *See Johnson*, 240 A.3d at 585. Therefore, the trial court properly denied Appellant's motions to suppress and its findings related thereto are amply supported by the record. Accordingly, we affirm the order of the trial court.

 

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 377 C.D. 2024 |
| | : | |
| Keith Jeffrey Alcibiade, | : | |
| Appellant | : | |

## ***ORDER***

AND NOW, this 19th day of  May, 2025, the February 29, 2024 order entered by the Armstong County Court of Common Pleas is hereby AFFIRMED.


_____
PATRICIA A. McCULLOUGH, Judge