**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**John FARNAN, Appellant.**

Superior Court of Pennsylvania.

Argued June 28, 2012.
Filed Oct. 11, 2012.

Michael J. Witheral, Pittsburgh, for appellant.

Karen T. Edwards, Assistant District Attorney and Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: OLSON, WECHT and PLATT,* JJ.

OPINION BY OLSON, J.:

Appellant, John Farnan, appeals from the judgment of sentence entered on August 18, 2011 in the Criminal Division of the Court of Common Pleas of Allegheny County. We affirm.

Following a bench trial on August 18, 2011, the court found Appellant guilty of driving under the influence (DUI-general impairment),[1] driving under the influence (DUI-highest rate),[2] driving while operating privilege suspended/revoked,[3] and driving without a license.[4] Immediately thereafter, the court sentenced Appellant to 90 days' restrictive intermediate punishment, 18 months' probation, and fines, costs and other restrictions.

The trial court summarized the factual and procedural background in this case as follows:

On September 21, 2010, Sergeant David Mazza of the Sewickley Borough Police Department responded to a call received at approximately 4:40 p.m. The call involved a potential problem involving a custody dispute. [K.L. (Appellant's ex-wife) ] requested police assistance at her home on Bank Street. [K.L.] informed Sergeant Mazza that [Appellant] was on his way to pick up the couple's children, contrary to their custody order. She indicated to Sergeant Mazza that she thought that there was going to be a problem between she and [Appellant], which was why she called the police. Sergeant Mazza was familiar with both [K.L.] and [Appellant], having been involved in past incidents between the two.

Sergeant Mazza was one of three (3) officers in two (2) marked cars who arrived at the scene. At the time of his arrival, [Appellant] was not present at [K.L.'s]. While the officers were speaking with [K.L.], she pointed to a vehicle that was traveling along Bank Street and said "Here he comes." A vehicle approached [K.L.'s] house and then proceeded down the street without stopping. Sergeant Mazza was able to identify [Appellant] as the driver of the vehicle, as well.

Sergeant Mazza testified that, within thirty (30) days before this incident, [K.L.] had informed him that [Appellant] was driving with a suspended license. Upon receiving the information, Sergeant Mazza had confirmed that [Appellant's] license was suspended for a DUI-related matter. [Appellant] drove past [K.L.'s] house after looking at the officers and [K.L.] standing outside. Sergeant Mazza then got into his police car and followed [Appellant]. After approximately 20 seconds, Sergeant Mazza ac-

* Retired Senior Judge assigned to the Superior Court.

1. 75 Pa.C.S.A. § 3802(a)(1).

2. 75 Pa.C.S.A. § 3802(c).

3. 75 Pa.C.S.A. § 1543(b)(1).

4. 75 Pa.C.S.A. § 1501(a).

tivated his lights and [stopped Appellant]. Sergeant Mazza testified that he pulled [Appellant] over [ ] for three (3) reasons: (1) the suspended license; (2) the suspicious behavior in driving past [K.L.'s] house due to the presence of police vehicles and personnel; and (3) the need to investigate [K.L.'s] complaint.

Sergeant Mazza was the sole witness who testified at the suppression hearing. [The trial court found Sergeant Mazza's testimony to be credible and concluded that the traffic stop was supported by reasonable suspicion, including the fact that Sergeant Mazza articulated specific grounds to support his belief that Appellant was operating his vehicle with a suspended driver's license. Accordingly, the trial court] denied [Appellant's] [s]uppression [m]otion pursuant to an [o]rder dated July 19, 2011. [Appellant] proceeded to a stipulated non-jury trial on August 18, 2011[. At trial, evidence was introduced that Appellant failed four field sobriety tests and that his blood alcohol content was .185%.] [Appellant] was found guilty on all counts.

Trial Court Opinion, 12/2/11, at 1–3.[5]

Appellant's brief raises the following questions for our consideration:

Whether the [t]rial [c]ourt erred in failing to suppress evidence obtained as a result of an unlawful traffic stop, where there was no reasonable suspicion that criminal activity was afoot or that a violation of the Motor Vehicle Code was occurring[?]

Whether the [trial court] erred in finding reasonable suspicion to justify [the] traffic stop where facts articulated by the arresting [o]fficer and found by the [t]rial [c]ourt in support of reasonable suspicion, consisted of stale information

regarding a past Motor Vehicle Code [v]iolation and/or a potential civil custody, dispute, rather than fresh information or facts which might infer a current Code violation or involvement in actual criminal activity[?]

Appellant's Brief at 8.

■ Because Appellant challenges an order that denied his motion to suppress, we review his claims pursuant to the following standard and scope of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–784 (Pa.Super.2012) (citations omitted).

Appellant's claims center on his contention that Sergeant Mazza lacked reasonable suspicion to conduct a traffic stop.

---

5. The requirements of Pa.R.A.P. 1925 have been satisfied in this case.

Specifically, Appellant argues that Sergeant Mazza's prior knowledge regarding the suspended status of Appellant's driver's license was approximately 30 days old when the vehicle detention occurred and, therefore, constituted stale information. Appellant reasons that, because Sergeant Mazza relied upon stale information, the trial court erred in concluding that the Commonwealth came forward with sufficient facts from which it could reasonably be inferred that Appellant had been driving with a suspended license at the time he was detained.[6] Appellant concludes that because the stop was invalid, the evidence recovered as a result should have been suppressed and his judgment of sentence must be vacated. We disagree.[7]

In Pennsylvania, a police officer has authority to stop a vehicle when he or she has reasonable suspicion that a violation of the Motor Vehicle Code is occurring or has occurred.[8] Our Supreme Court defines reasonable suspicion as:

> a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, *a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot.* In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation of the Motor Vehicle Code[.]

*Commonwealth v. Holmes*, 609 Pa. 1, 14 A.3d 89, 95–96 (2011) (internal citations omitted) (emphasis in original). "[W]hether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Id.* at 96.

We have been unable to locate, and the parties have not cited, any Penn-

6. At the time of Appellant's vehicle stop, driving while one's operating privilege had been suspended or revoked because of a DUI-related offense was proscribed under the Motor Vehicle Code by 75 Pa.C.S.A. § 1543(b)(1). That provision has recently been amended in ways which are not germane to this case.

7. Appellant also challenges the trial court's ruling to the extent it relied on Appellant's allegedly suspicious behavior in driving past K.L.'s house and Sergeant Mazza's desire to further investigate K.L.'s child custody complaint as alternate grounds for finding that reasonable suspicion supported the traffic stop under review. We see no evidence in the record which suggests that Appellant's involvement in criminal activity lay at the heart of these proffered justifications for Appellant's detention. Accordingly, we agree with this aspect of Appellant's claim and confine our analysis to Appellant's contention that the stop was invalid because the information within Sergeant Mazza's possession was stale.

8. The relevant statutory authority provides:

   **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.
   75 Pa.C.S. § 6308(b).

sylvania decision that addresses the precise issue raised in this case, *i.e.* whether information possessed by an officer for approximately 30 days is too stale to furnish reasonable suspicion of ongoing criminal activity in support of a traffic stop. In *Commonwealth v. Stevenson*, 832 A.2d 1123 (Pa.Super.2003), this Court held that the passage of three years invalidated an officer's reliance on license suspension information to justify a vehicle detention. At the other end of the spectrum, in *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa.Super.2008), *appeal denied*, 598 Pa. 763, 956 A.2d 432 (2008), we determined that an officer's acquisition of license suspension information immediately prior to a traffic stop did, in fact, establish reasonable suspicion; however, we invalidated the detention on other grounds.

Although no Pennsylvania decisions have considered the freshness, reliability, and validity of license suspension information that falls between the limits examined in *Stevenson* and *Hilliar*, the Commonwealth has brought to our attention several authorities emanating from our sister states which hold that an officer's recent knowledge regarding a license suspension, including information acquired within 30 days of a traffic stop, may be sufficient to establish reasonable suspicion. *See e.g., State v. Batts*, 281 Conn. 682, 916 A.2d 788, 795–796 (2007), *cert. denied*, 552 U.S. 1047, 128 S.Ct. 667, 169 L.Ed.2d 524 (2007) (information obtained within past two to three weeks established reasonable suspicion to believe defendant was driving under suspension); *State v. Harris*, 236 Ga. App. 525, 513 S.E.2d 1, 3–4 (1999) (information obtained in the last few weeks justified investigatory stop); *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365, 367–369 (1975) (license check within past month was sufficient to sustain stop); *State v. Duesterhoeft*, 311 N.W.2d 866, 867–868 (Minn.1981) (citing *Vaughn* and holding that month-old information about license suspension supported stop); *Stone v. State*, 856 So.2d 1109, 1111–1112 (Fla. App. 4 Dist.2003) (officer's awareness of license suspension in July 2001 was sufficiently fresh to support stop on August 20, 2001 despite reinstatement of driving privileges); *Deboy v. Commonwealth*, 214 S.W.3d 926, 929 (Ky.App.2007) (officer's knowledge of license suspension a few, but not several, months prior to stop established reasonable suspicion).

Because our Supreme Court has consistently emphasized that the totality of circumstances must be considered when evaluating whether an officer had reasonable suspicion to effect a traffic stop, we cannot adopt a bright-line rule that separates fresh knowledge from stale information for purposes of the present constitutional inquiry. Nevertheless, we acknowledge that longer delays necessarily invite closer judicial scrutiny and that, at some point along the timeline, as recognized in *Stevenson*, supra, information may become so stale that its probative value no longer is capable of supporting an investigative detention. We are persuaded, however, that under the circumstances presented in this case,[9] and given the authorities cited by the Commonwealth, the 30–day period be-

---

9. Sergeant Mazza testified at Appellant's suppression hearing that he was aware that Appellant's suspension was DUI-related. Under the Motor Vehicle Code, DUI-related suspensions can range from 30 days up to 18 months. *See* 75 Pa.C.S.A. § 3807(d)(2) (setting minimum DUI suspension at 30 days where certain conditions apply); *see also* 75 Pa.C.S.A. § 3804(e)(2)(ii) (setting DUI suspension at 18 months for misdemeanors of the first degree under the Motor Vehicle Code). The parties stipulated that, when he conducted the stop, Sergeant Mazza was unaware that Appellant was eligible for the return of his license in June 2010, that Appellant's license had not been reinstated as of Septem-

tween Sergeant Mazza's acquisition of information regarding Appellant's license status and the challenged investigative vehicle detention was not so lengthy as to deplete the officer's knowledge of its probative value concerning the likelihood that Appellant was in violation of the Motor Vehicle Code at the time of the stop. Accordingly, the trial court did not err in concluding that the traffic stop of Appellant's vehicle was supported by reasonable suspicion and, hence, valid.

■ Appellant stresses on appeal that the stop was unjustified because of the ease with which Sergeant Mazza could have reconfirmed the status of Appellant's license suspension by checking the laptop computer in his patrol vehicle. Our search and seizure law is clear, however, that an officer may detain an individual for investigative purposes where he reasonably suspects that criminal activity is afoot; the officer need not delay the interaction until he has acquired the greatest **available** quantum of information indicating that the defendant is engaged in unlawful conduct. *See Commonwealth v. Blair*, 860 A.2d 567, 573 (Pa.Super.2004) ("[A] police officer may, short of an arrest, conduct an investigative detention if he **has** a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot.") (emphasis added).

Appellant also makes the related observation that his license could have been reinstated during the intervening 30–day period and that Sergeant Mazza, therefore,

could not be certain that Appellant was in violation of the Motor Vehicle Code at the time of the stop. Pennsylvania courts have consistently held that **reasonable suspicion** of criminal activity is all that is required to support an investigative detention. *See Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1189 (2004) (police may detain an individual for investigative purposes where officer reasonably suspects that individual is engaged in criminal activity). Thus, contrary to Appellant's assertion, Sergeant Mazza did not need to be absolutely certain that Appellant was driving under a suspended license in order to commence his investigation.

Based on the foregoing analysis, we conclude that, under the totality of circumstances in this case, the 30–day delay between the time Sergeant Mazza learned that Appellant's license was suspended and the date the officer conducted a traffic stop was not so lengthy that it rendered the officer's information stale. The trial court, therefore, did not err in concluding that Sergeant Mazza articulated sufficient facts to support a reasonable belief that Appellant was in violation of the Motor Vehicle Code at the time of the traffic stop. Consequently, Appellant's investigative detention was lawful, and the evidence obtained as a result of the stop was not subject to suppression. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

WECHT, J., files a Concurring Opinion.

---

ber 21, 2010, and that Appellant's operating privileges were restored on November 19, 2010.

· In line with the astute comments and observations set forth in the learned concurring opinion, we view Sergeant Mazza's awareness of the nature of Appellant's license suspension as a significant factor contributing to our conclusion that reasonable suspicion supported the challenged stop in this case. How-

ever, because the flexible "totality of circumstances" test permits courts to consider an officer's knowledge regarding the nature of an ongoing license suspension, together with other relevant evidence, when determining whether a particular stop is justified by sufficiently fresh information and, thus, constitutionally valid, we do not adopt the bright-line "minimum suspension" rule espoused in the concurring opinion. *Compare*, Concurring Opinion at 120.

CONCURRING OPINION BY
WECHT, J.

I concur in the result reached by the learned majority. Nonetheless, I differ with its analysis. I believe that, applying the totality of the circumstances to the basic factual scenario presented in this case, a general rule should emerge that protects the privacy rights of this Commonwealth's drivers while providing police with the guidance necessary constitutionally to detect unlicensed individuals driving on our roads.

Conducting traffic stops is a substantial aspect of many police officers' daily duties. Through these efforts, police officers often become familiar with certain drivers, and with the status of those individuals' driver's licenses. Often, a police officer learns, through a variety of circumstances, that a particular driver either does not have a valid operator's license, or that the license is suspended due to previous traffic infractions, including driving under the influence of alcohol or drugs ("DUI"). Instantly, Officer Mazza learned approximately thirty days before the traffic stop that occurred in this case that Appellant's license was suspended because of a prior DUI. The officer did not know when the suspension commenced, when it was to terminate, or whether Appellant had taken the requisite steps to effectuate restoration of his driving privileges.

To stop a vehicle, a police officer only needs reasonable suspicion of a motor vehicle violation. See 75 Pa.C.S. § 6308(b). This case raises one heretofore unresolved problem that police officers face in these circumstances: How much time must pass after learning that the driver was not properly licensed before reasonable suspicion no longer exists that the same driver is operating a vehicle without a valid license? The majority holds that the thirty days that passed in this case was not suffi-

cient to defeat Officer Mazza's reasonable suspicion that Appellant continued to drive with a suspended license. Majority Opinion ("Maj. Op.") at 118. With this finding, I agree.

However, I disagree with the majority's holding that "[b]ecause our Supreme Court has consistently emphasized that the totality of the circumstances must be considered when evaluating whether an officer had reasonable suspicion to effect a traffic stop, we cannot adopt a bright-line rule that separates fresh knowledge from stale information for purposes of the present constitutional inquiry." Maj. Op. at 117. I do not dispute this holding generally, as it is necessary to resolve most search and seizure cases. At times, though, certain standards are unworkable in practice and unnecessarily complicate things for police officers, litigants, and the courts. This is one such situation.

The fact of the matter is that, in time, Pennsylvania case law will approach establishment of a specific line for the inquiry at hand. As the majority notes, our case law currently establishes only outer boundaries of what is constitutionally permissible under these circumstances. At one end, reasonable suspicion exists when a police officer learns that a driver's license is suspended immediately before the traffic stop. See Commonwealth v. Hilliar, 943 A.2d 984, 989–90 (Pa.Super.2008). On the other end, reasonable suspicion does not exist to stop a driver when the officer last confirmed the suspension approximately three years before the traffic stop. See Commonwealth v. Stevenson, 832 A.2d 1123, 1130–31 (Pa.Super.2003). As cases with the basic fact pattern presented by this case come before our courts, the gap slowly will be closed by our decisions, until it is so narrow that it amounts to a bright line.

I would head off years of uncertainty by drawing that line today. Presently, a po-

lice officer acting within the now-existing boundaries is left to guess whether reasonable suspicion exists, and thus whether that officer can validly effectuate a traffic stop. For instance, does an officer have reasonable suspicion if the suspension information was obtained one year before the stop? Six months? Two months? The majority does not resolve this problem in terms that provide any broader guidance. The failure to do so leaves police officers in the unenviable position of having to guess when courts will find that enough time has passed to render the officer's information stale. In turn, the Commonwealth's drivers may be subjected to unreasonable seizures of their persons and vehicles as a result of the uncertainty. A clear rule would alleviate these dangers.

The majority's decision merely moves the line in our case law from immediately before the stop to thirty days after learning of the driver's suspension. But a two and one-half year gap remains. I would alleviate this uncertainty by setting the outer boundary of freshness at thirty days, which is the shortest DUI-related suspension an individual may receive. *See* 75 Pa.C.S. § 3807(d)(2) (minimum DUI suspension when ARD conditions are met). In my view, it is reasonable for a police officer who knows that a driver's license is suspended to believe that the suspension continues for the minimum period of time a license can be suspended under the circumstances at hand as understood by the officer. However, without more, including when the suspension started, its exact duration, and its termination date, anything beyond thirty days constitutes mere conjecture. Such speculation runs afoul of the general principle that, to demonstrate reasonable suspicion, a police officer must be able to point to "specific and articulable facts" leading that officer to believe crimi-

nal activity is afoot. *Commonwealth v. Holmes*, 609 Pa. 1, 14 A.3d 89, 95 (2011) (quoting *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 228 (1996)).

The general rule that I would propose is based upon the minimum suspension that could apply under these circumstances. In other circumstances, the line may need to be drawn at a different juncture. If an officer has specific knowledge that a driver's license is suspended for an offense that carries a different minimum penalty, the line must be adjusted accordingly. By way of example, if an officer knows that a specific driver's license was suspended for refusing a post-DUI blood test, a violation that carries a minimum one-year suspension,[1] in my view, the totality of the circumstances could not result in a reasonable suspicion finding beyond one year of the date of acquiring the relevant knowledge.

To be clear, I am not advocating abandonment of the totality of the circumstances test. Rather, as we apply it to the cases that will continue to come before this Court, it is inevitable that a distinct line will emerge. In my view, the totality of the circumstances in the instant case, in which the officer's suspicion is based solely upon the knowledge of a prior suspension, do not establish a reasonable suspicion beyond thirty days. My view is limited to circumstances in which, without more, a police officer observes a person driving whom the officer knows did not have a valid driver's license at some point in the recent past, as was the case here. The rule I propose would not apply strictly when, for instance, the officer has more specific knowledge about the duration of the suspension, or where other facts contribute to create reasonable suspicion. Moreover, the rule I propose would have at best limited utility where the police

---

1. 75 Pa.C.S. § 1547(b)(1)(i).

officer does not have precise knowledge of the exact date he learned of the driver's suspension. Under such circumstances, the more conventional and typically fluid totality of the circumstances test should apply.

I must also observe that the problems that these specific situations cause could be alleviated by a routine police procedure. These cases, in part, are defined by the fact that the officer knows the identity of the driver. The police officer, when practicable and safe while following the suspected vehicle, can ascertain the status of the driver's license status by utilizing the computer attached to the police cruiser's dashboard, or seeking outside assistance by radio. Of course, the law does not require police officers to take this simple step, because to do so would amount to requiring probable cause to suspect unlicensed driving before stopping a vehicle. Our law is clear that only reasonable suspicion is required. Nonetheless, where practicable, this simple step could prevent the police from relying upon their prediction whether the information they had at the time would later be ruled to be stale by a suppression court. More importantly, it would reduce the possibility of unconstitutional seizures of properly licensed drivers.

In circumstances such as those presented in this case, I believe the totality of the circumstances establish a reasonable suspicion only up to thirty days. This eliminates the police speculation that our cases currently require. Because the majority declines to set such a line, but correctly finds that the information in this case was not stale, I concur only in the result.