J-S28009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUSSELL A. SCHMIDT | : | |
| | : | |
| Appellant | : | No. 358 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 27, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005668-2021

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:                **FILED: November 16, 2023**

Russell A. Schmidt appeals from the judgment of sentence entered after

the trial court, after a stipulated bench trial, found him guilty of driving while

impaired by alcohol and driving while operating privileges were suspended.

Schmidt argues that the trial court erred in failing to suppress evidence of his

inebriation gained after he was stopped because the basis for the stop was an

erroneous PennDOT record summary. We conclude that regardless of any

errors about the status of Schmidt's license, the officer had reasonable

suspicion for the stop and therefore affirm.

The factual and procedural history of this appeal are essentially

undisputed; the only relevant disputes concern whether Schmidt's driving

privileges were suspended at the time of the stop, and whether the arresting

_____

* Former Justice specially assigned to the Superior Court.

officer's good faith reliance on the information contained in PennDOT records was sufficient to justify the stop regardless of the accuracy of that information. With that in mind, we note that on May 6, 2021, Officer Allan Yonek of the Harmar Township Police Department observed Schmidt driving a vehicle southbound on Freeport Road. Officer Yonek entered Schmidt's license plate number into his computer, which reported that Schmidt's operating privileges had been suspended. The computer report contained a picture of Schmidt that matched Officer Yonek's observations of the driver. Relying solely on his belief that Schmidt's license had been suspended, Officer Yonek stopped Schmidt.

Based on his interactions with Schmidt, Officer Yonek charged Schmidt with driving with a blood alcohol content of 0.16% or higher, driving while impaired by alcohol to an extent that Schmidt could not safely drive, and driving while his license was suspended. Schmidt filed a motion to suppress all evidence gained from the traffic stop, alleging that the computer record indicating that his license had been suspended was incorrect.

After a hearing, the trial court denied Schmidt's motion to suppress, and the parties immediately agreed to a stipulated non-jury trial. Officer Yonek's affidavit of probable cause and a lab report indicating Schmidt's blood alcohol content from May 6, 2021, were entered into evidence without objection from Schmidt. The court found Schmidt guilty on all charges and sentenced him to 90 to 180 days of incarceration on the driving with a blood alcohol content over 0.16% charge, no further penalty on the charge of driving under the influence of alcohol such that he could not safely drive, and a $200 fine on the

driving while his license was suspended charge. Schmidt did not file a post-sentence motion but did file this timely appeal.

On appeal, Schmidt raises a single challenge to the trial court's denial of his motion to suppress. When this Court reviews a trial court's denial of a suppression motion, we are limited to reviewing only the evidence presented at the suppression hearing. *See **Commonwealth v. Carey,*** 249 A.3d 1217, 1223 (Pa. Super. 2021). We look to see whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ***See id*.** While we are bound by the suppression court's factual findings if those findings are supported by the record, we are not bound by the suppression court's legal conclusions. ***See id*.** To the contrary, it is our duty to determine if the suppression court properly applied the law to the facts. ***See id*.**

Schmidt contends that his license was not, as a matter of law, suspended on May 6, 2021, and that therefore, the information contained in Officer Yonek's computer was incorrect. He argues that since Officer Yonek relied on faulty information, Officer Yonek, as a matter of law, could not have had reasonable suspicion or probable cause to stop him.

Initially, Schmidt highlights that the April 28, 2021 entry in Schmidt's certified driving record references 23 Pa.C.S.A. § 4355. Further, Officer Yonek testified that this entry reflects the issuance of a warning notice, not a notice of a suspension. ***See*** N.T., Suppression Hearing, 12/2/2021, at 14. Under section 4355, a person who is sufficiently delinquent on a child support

- 3 -

obligation can have his driver's license suspended. *See* 23 Pa.C.S.A. § 4355(a)(2). However, prior to suspension, the obligor must be given 30 days' notice before the license is suspended to allow for an opportunity to pay the necessary arrearages. *See* 23 Pa.C.S.A. § 4355(b). We also note that neither the Commonwealth nor the trial court present argument contrary to Schmidt's assertion that his license was not suspended on May 6, 2021.

Since May 6, 2021, was not 30 days after April 28, 2021, we must conclude that Schmidt's license was not suspended when Officer Yonek stopped him. However, this does not necessarily mean that the trial court erred in denying Schmidt's motion to suppress. Rather, we still must determine whether Officer Yonek's good-faith reliance on the faulty information in his computer was sufficient to justify stopping Schmidt.

Schmidt contends that because Pennsylvania does not recognize a good-faith exception to the exclusionary rule, Officer Yonek's reliance on incorrect information is insufficient to justify the traffic stop. While Schmidt is correct that Pennsylvania does not recognize a good-faith exception to the exclusionary rule, we note that the boundaries and implications of this rejection are not entirely clear. *See Commonwealth v. Hopkins*, 164 A.3d 1133 (Pa. 2017) (affirming, due to an equally divided Court, an order suppressing evidence on the basis that information in a search warrant application, though believed in good faith by the affiant, was fabricated by an informant). Pennsylvania's rejection of the good faith exception is based on

our state constitution's heightened guarantee of privacy. *See Commonwealth v. Edmunds*, 586 A.2d 887, 897 (Pa. 1991).

Most importantly however, Schmidt has not provided us with any authority that applies the rejection of the good faith exclusion in scenarios requiring only reasonable suspicion as opposed to probable cause. *See id.* (rejecting good faith exception for search warrant later found to lack probable cause); *Commonwealth v. Johnson*, 86 A.3d 182 (Pa. 2014) (rejecting good faith exception for trooper relying on incorrect computer report that appellant had an active arrest warrant); *Commonwealth v. Antoszyk*, 985 A.2d 975 (Pa. Super. 2009) (rejecting good faith exception for search warrant where informant lied to affiant); *Commonwealth v. Frederick*, 124 A.3d 748 (Pa. Super. 2015) (rejecting good faith exception where officers wholly failed to comply with the "knock and announce" rule); *Commonwealth v. Carper*, 172 A.3d 613 (Pa. Super. 2017) (rejecting good faith exception where officer used unconstitutional written explanation of rights); *Commonwealth v. Bergamasco*, 197 A.3d 805 (Pa. Super. 2018) (rejecting good faith exception where officer did not have probable cause to believe a crime had been committed while outside his home jurisdiction).

Schmidt also fails to argue that Officer Yonek's stop required anything other than reasonable suspicion to justify it. Based on our research, we conclude that reasonable suspicion is the appropriate burden when an officer suspects a driver may be operating with a suspended license. *See Commonwealth v. Farnan*, 55 A.3d 113, 118 (Pa. Super. 2012).

We find this distinction to be critical. Reasonable suspicion is a lower burden than probable cause: "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." **Commonwealth v. Cook**, 735 A.2d 673, 676 (Pa. 1999) (citation omitted). Reasonable suspicion is "a less stringent standard than probable cause necessary to effectuate a warrantless arrest[.]" **Farnan**, 55 A.3d at 116. Reasonable suspicion does not require an officer to delay his detention of an individual until he has exhausted every other avenue of investigation. **See id.** at 118.

Most importantly, the lesser burden of proof for reasonable suspicion is based on the lesser intrusion into the individual's freedom and privacy:

> An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person. It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.

**Terry v. Ohio**, 392 U.S. 1, 26 (1968).

Under **Terry**, investigative stops based on reasonable suspicion are permitted precisely because they involve a lesser invasion of the detainee's

privacy. As such, we cannot automatically apply Pennsylvania's rejection of the good faith exception in cases that involve a lesser intrusion into an appellant's privacy. Rather, we must assess whether the invasion of privacy caused by the stop is sufficient to violate the Pennsylvania Constitution.

Officers are rarely certain about their suspicions. And this is why they are permitted to investigate further with temporary, limited seizures of the person to perform their investigation. If any factual mistake in the officer's rationale automatically required suppression, *Terry* style investigative stops would not exist. Here, since Officer Yonek was only engaged in a temporary stop to investigate whether Schmidt was driving while his license was suspended. There is no indication in the record that the Officer Yonek's investigation exceeded the normal bounds of a *Terry* stop or otherwise constituted the functional equivalent of a full arrest. Therefore, the logic underlying Pennsylvania's rejection of the good faith exception does not apply.

Accordingly, we conclude that Officer Yonek's honest, good faith reliance on the information from his computer was sufficient to justify his stop of Schmidt. The trial court therefore did not err in denying Schmidt's motion to suppress.

Judgment of sentence affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge Olson did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

11/16/2023