J-S36035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY ISAIAH THOMAS | : | |
| | : | |
| Appellant | : | No. 1651 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 23, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000978-2022

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED NOVEMBER 07, 2024**

Anthony Isaiah Thomas ("Appellant") appeals from the judgment of sentence imposed for possession of marijuana and other offenses. Appellant challenges the denial of suppression, as well as the sufficiency of the evidence to support his conviction for tampering with evidence. After careful review, we affirm in part, reverse in part, and remand for further proceedings.

The facts were set forth by the trial court as follows:

> Appellant asserted [that] Lancaster City Bureau of Police (hereinafter "LPD") unconstitutionally stopped him because they lacked reasonable suspicion. LPD testified that they were conducting surveillance in the area [] Appellant was detained because it was a high drug area. LPD particularized their suspicion to that corner where [] Appellant's activity occurred because a confidential informant (hereinafter "CI") notified them of drug trafficking at that address. An individual (hereinafter "Person of Interest") came out of the targeted building acting in a manner consistent with drug dealing. A vehicle drove up to the address and parked. The driver of the vehicle was later identified as [] Appellant. The Person of Interest quickly entered and exited the

vehicle. [] Appellant drove off immediately as if "trying to create distance between themselves and where the activity took place." LPD developed a suspicion of illegal drug activity and sought to stop [] Appellant. Upon LPD signaling their intent to stop, [] Appellant attempted to pull out of the view of LPD. Upon temporarily stopping, he discarded an item from his vehicle window. This item was a package containing marijuana. [] Appellant then moved to a new location and complied with the commands of LPD. Upon being stopped, [] Appellant admitted to having marijuana in his car. Upon a consented search of the vehicle, LPD found marijuana in [] Appellant's vehicle.

Trial Court Opinion (TCO), 2/27/24, at 2-3 (internal citations to transcript omitted, footnote omitted).

A criminal information filed March 10, 2022, charged Appellant with four counts: possession of marijuana (35 P.S. § 780-113(a)(31)), possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), tampering with evidence (18 Pa.C.S. § 4910(1)), and scattering rubbish (18 Pa.C.S. § 6501(a)(1)). Defense counsel filed a motion to suppress the evidence against Appellant on April 8, 2022. Following a hearing, the motion was denied on May 24, 2022.[1] After numerous continuances, a stipulated bench trial followed on October 23, 2023, after which the trial court found Appellant guilty of all four counts. The court then imposed an aggregate sentence of two years of probation. Sentencing Order, 10/23/23.

---

[1] The trial court did not enter findings of fact and conclusions of law at the conclusion of the suppression hearing as required by Pa.R.Crim.P. 581(I). However, in such a case, the reviewing Court may garner the trial court's findings of fact and conclusions of law from its Pa.R.A.P. 1925(a) opinion. *Commonwealth v. Parker*, 161 A.3d 357, 360 n.5 (Pa. Super. 2017).

No post-sentence motions were filed. Appellant filed a timely notice of appeal on November 22, 2023, and a timely statement of errors complained of on appeal pursuant Pa.R.A.P. 1925(b) on December 27, 2023. The trial court issued its Rule 1925(a) opinion on February 27, 2024.

Appellant raises the following claims in this appeal:

I.      Did the trial court err in denying the [m]otion to [s]uppress the fruits of [Appellant's] illegal detention, which was unsupported by reasonable suspicion, and which was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania?

II.     Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [Appellant] committed the offense of tampering with physical evidence, where [Appellant] merely abandoned the evidence in clear view of the police after they initiated a traffic stop?

Brief for Appellant at 5.

Appellant first argues that the trial court erred in denying his motion to suppress the evidence. This Court's well-settled standard of review of a denial of a motion to suppress is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the

- 3 -

suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015) (cleaned up). The reviewing court's scope of review is limited to the record evidence from the suppression hearing. *Id.*

The Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution both protect individuals from unreasonable searches and seizures. *Parker*, 161 A.3d at 362*.* Moreover, in our jurisprudence, a warrantless seizure is presumptively unreasonable under both constitutions. *See generally Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007). Our courts have delineated three categories of interactions between citizens and the police:

> The first is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention," must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* If a "detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention." *Commonwealth v. Mattis*, 252 A.3d 650, 654 (Pa. Super. 2021).

The parties in the case at bar do not dispute that the vehicle stop here was an investigative detention. We agree. *See Commonwealth v. Chase*, 960 A.2d 108 (Pa. 2008) (noting, *inter alia*, that a vehicle stop is generally

considered to be an investigative detention).  As such, it must be supported by a reasonable suspicion that criminal activity is afoot.  ***Commonwealth v. Way***, 238 A.3d 515, 519 (Pa. Super. 2020).

> To prove reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience.  The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances.

***Id.*** (internal citations and quotation marks omitted).  While the term "reasonable suspicion" has been interpreted in various ways, it is clear it requires more than an "educated hunch" by law enforcement. ***Commonwealth v. Donaldson***, 786 A.2d 279, 281 (Pa. Super. 2001).

In the present case, Officer Brandon McCormick testified at the suppression hearing that he was a member of a special unit of the LPD which focused mostly on street-level drug crimes throughout the city of Lancaster. N.T., 5/24/22, at 6.  Officer McCormick testified that he had participated in approximately one hundred drug transactions in an undercover capacity. ***Id.*** at 9.  On the day in question, the officer was involved in surveillance at the intersection of Dauphin and South Ann Street, calling this location a "high crime area" due to the high number of citizen complaints and incidents involving drug sales at that specific intersection.  ***Id.*** at 12-13.  Officer McCormick reported that, just a few weeks prior to Appellant's arrest, a confidential informant had purchased narcotics at this same intersection and sold them to an undercover officer.  ***Id.*** at 13.

Officer McCormick described what he observed that evening as follows:[2]

> As I'm parked [across the street], I see a subject walk out of the corner store at Dauphin and Ann. He's intently looking at his phone. He's intently looking around. Clearly to me it's looking that he's looking for somebody. …
>
> So as that subject comes out of the corner store, a little bit of time passes. I would say not even a minute passes and a vehicle comes south on Ann Street [and parks.] … I can see the subject who had walked out of the corner store — I can see as this vehicle is pulling up, making the turn and parking there — intently looking at the car. So this is clearly who they were waiting for, who I interpreted as them communicating with on their phone.
>
> They walk up to the front passenger seat of this silver -- like a silver hatchback. They get in the vehicle -- I'm radioing this out the entire time -- and the subject exits within, I'd say, 15 to 20 seconds or so.
>
> The vehicle then immediately drives off eastbound on Dauphin Street and turns north onto Marshall Street.
>
> The subject who had gotten out of the store kind of meanders around -- excuse me, the subject who had entered and then gotten out of the car, kind of meanders around the corner for a few moments. … I'm not sure where the subject that had entered and exited the car had gotten to after all this because I had to drive out of the area.

*Id.* at 14-16.

Appellant argues that these facts do not support a finding of reasonable suspicion. First, Appellant maintains that the Commonwealth

> offered evidence that suggested that the street corner in question was a high drug area, but none of the evidence was tied to the corner store, the unknown person who walked out of the corner store and entered the vehicle, or the driver of the vehicle, [Appellant]. The evidence that the area was a high drug area included the January 2021 purchase of drugs from a subject at

---

[2] The events took place at around 6:45 p.m. N.T. at 13.

that intersection, a purchase of drugs at the intersection in December 2021, a purchase of drugs in the apartment above the corner store in 2020, and information from a confidential informant[,] between Summer 2020 and the end of 2020[,] that there was drug trafficking occurring in the apartment above the corner store. None of these prior interactions were tied to the corner store, the unknown person who walked out of the corner store, or to [Appellant].

Brief for Appellant at 18-19.

The Commonwealth counters this argument by noting that the police had been aware that illegal drugs were being sold at that intersection for a significant period of time. Brief for Appellee at 13. Further, Officer McCormick had been personally involved in surveillance during an undercover buy at that location in December 2021, just weeks before this incident. *Id.* Moreover, the Commonwealth continues, when the unknown individual in this case left the corner store, he did not have any bags or purchased items with him. *Id.* This person anxiously looked at his phone and his surroundings, waiting for someone to arrive. *Id.* After about a minute passed, Appellant's vehicle pulled up and this person entered the vehicle for about fifteen seconds, "just enough time for the drug transaction to take place." *Id.* Appellant's vehicle then "quickly pulled away from the curb and sped away from the scene, as if the driver wanted to distance himself from what just happened there." *Id.* at 13-14. The Commonwealth concludes that this is sufficient evidence that "something illegal had just occurred." *Id.* at 14.

Because Appellant argues that this case is on all fours with ***Donaldson***, ***supra***, we consider the facts of that case. There, an officer performing

surveillance in a high drug activity neighborhood of Allentown saw a green and cream-colored pickup truck drive slowly through the block, with the pickup's driver (Donaldson) looking back and forth, like he was searching for something, before leaving the area. ***Donaldson,*** 786 A.2d at 280. Moments later, however, after circling the block, the pickup truck slowly reappeared, stopping near a Hispanic man standing at the corner. ***Id.*** After a brief conversation, the Hispanic man entered the pickup and it drove to an apartment building. ***Id.*** Police were familiar with this apartment building, as they had received several complaints of drug activity within. ***Id.***

When the pickup stopped in front of this building, the Hispanic man got out and went inside, only to exit "moments later" with another man. ***Id.*** The Hispanic man re-entered the pickup on the passenger side, but the other man went to the driver's side window, spoke briefly to Donaldson, and then returned to the building. ***Id.*** The Hispanic man stayed in the pickup truck for a short distance as it drove away, then alighted. ***Id.*** The officer who observed these events then called dispatch to stop the pickup truck after it left the area. ***Id.*** Donaldson was stopped and found to have a package of heroin secreted in his mouth. ***Id.*** at 281. Officers also found syringes under the driver's seat. ***Id.***

Donaldson moved to suppress the evidence, claiming that the officers did not have reasonable suspicion for the traffic stop. The trial court denied his motion and, following conviction, Donaldson filed an appeal. This Court reversed, finding that suppression was warranted. Preliminarily, we noted:

"While certain activity may seem generally suspicious or 'fishy,' it does not necessarily equate to 'reasonable suspicion' for purposes of search and seizure law." *Id.* at 282. Further, the panel stated that, "in cases involving suspicion of having witnessed a drug transaction, the caselaw would seemingly require the observance of an exchange of some sort." *Id.* The ***Donaldson*** panel explained:

> [I]n the present case[, the o]fficer … may have observed activity that seemed "fishy" to her or may have created an "educated hunch" that something illegal might be taking place, namely someone seeking drugs. However, on balance, her observations were simply insufficient to rise to the level deemed reasonable to allow the intrusion of an investigative detention. While observing an individual entering and exiting [Donaldson's] vehicle, she observed no exchange of items or transaction. The actions of individuals entering and exiting the vehicle are not more indicative of a drug transaction than was the fraternizing between a pedestrian and the occupants of a vehicle that occurred in [***Commonwealth v.*** ]***Carter***[, 779 A.2d 591 (Pa. Super. 2001)] and [***Commonwealth v.*** ]***Tither***[, 671 A.2d 1156 (Pa. Super. 1996)]. Additionally, in both of those cases, evasive actions were taken once police were observed, a factor that was missing in the present case. Yet, even that factor did not create the "reasonable suspicion" necessary to justify an investigative detention. Consequently, in the present case, the initial stop of [Donaldson] was without the requisite "reasonable suspicion" and, therefore, illegal.

*Id.* at 284.[3]

Here, we understand Appellant's argument that, without the officer's

---

[3] The ***Donaldson*** Court then went on to analyze whether probable cause existed, as Donaldson had been in custodial detention when ordered out of his vehicle and given warnings pursuant to ***Miranda v. Arizona***, 383 U.S. 903 (1966). However, this additional fact does not revise the reasonable suspicion discussion above.

seeing an exchange between the parties, the conclusion that a drug sale had occurred in the car was only a hunch based upon the officer's feeling that something "fishy" was going on. We further recognize that some of the Commonwealth's evidence in support of reasonable suspicion was rather stale, including drug sales that had occurred almost 11 months prior, and that stale information may not support a finding of reasonable suspicion. *See Commonwealth v. Farnan*, 55 A.3d 113, 117 (Pa. Super. 2012) (stating that a bright-line test for staleness of information is unworkable because the totality of the circumstances must be considered before determining whether reasonable suspicion exists, but recognizing that "longer delays necessarily invite closer judicial scrutiny and that, at some point[,] … information may become so stale that its probative value no longer is capable of supporting an investigative detention"). Even with this recognition, however, reasonable suspicion can be found here, especially because not all of the information which supported the officer's suspicion of criminal activity was stale and thus incapable of predicting that drug sales were occurring at that location.

At Appellant's trial, Officer McCormick testified that he was aware of a particular defendant who sold drugs around that intersection in January 2021.[4] N.T. at 13. Further, through a confidential informant, police knew that drugs were allegedly sold from the apartment above the corner store in the summer of 2020. *Id.* at 23. This information, obtained several months before

_____

[4] For reference, Appellant was arrested on December 23, 2021.

- 10 -

Appellant's arrest, may not be very predictive as to whether drugs had continued to be sold from that location in December 2021. Yet, Officer Jacob Bingham, the officer who arrested Appellant, testified that he had purchased drugs at that intersection in an undercover capacity "about a week or two" prior to Appellant's arrest. *Id.* Officer McCormick had also been involved in this drug buy that had occurred just a few weeks earlier. *Id.* at 13-14. This recent sale, occurring at that intersection, supports the officers' reasonable suspicion that drug activity was occurring in that location.

We recognize Appellant's assertion that nothing connected him to the corner store or the apartment over the store. Moreover, the actor who exited the store and entered Appellant's car was not apprehended. Regardless, the officer's observations of this actor's actions in looking at his phone and nervously looking around for a car, then entering and quickly exiting Appellant's vehicle, support their suspicion that criminal activity was afoot. Police had information relating this intersection with recent drug activity, and observed activity consistent with a drug buy. In fact, these two officers had themselves been involved in purchasing drugs, so they have a background to support the conclusion that what they had seen was "the perfect amount of time for someone to hop in, confirm the amount, exchange money, have a quick word and part your ways." N.T. at 25. Even though the officers did not see a hand-to-hand transaction, we conclude that the trial court did not err in denying suppression in this case, as its legal conclusion that reasonable suspicion was shown on these facts is correct. Appellant is not entitled to

relief on this basis.

Appellant's second issue concerns his conviction for tampering with evidence. Appellant maintains that the evidence is insufficient to support his conviction for tampering with evidence, which is set forth in 18 Pa.C.S. § 4910(1) as follows:

### § 4910. Tampering with or fabricating physical evidence

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]

18 Pa.C.S. § 4910.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Commonwealth v. Toomer***, 159 A.3d 956, 960–61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

To establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending (or about to be instituted); (2) the defendant altered,

destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation. ***Commonwealth v. Jones***, 904 A.2d 24, 26 (Pa. Super. 2006).

***Id.*** at 961.

Officer Bingham testified in the trial court that he began following the silver Mazda hatchback being driven by Appellant after it left the area of the corner store, and it was one of the only vehicles on the road at that time. N.T. at 26. Officer Bingham activated his emergency lights and siren to conduct a traffic stop. ***Id.*** The hatchback turned onto East King Street and stopped for a few seconds. ***Id.*** Officer Bingham testified: "I could clearly see the driver throw something out of the passenger window of that vehicle[,]" and then the hatchback increased speed, pulling over at the end of the block. ***Id.*** at 26-27.

Appellant maintains that this issue is controlled by our Supreme Court's decision in ***Commonwealth v. Delgado***, 629 A.2d 223 (Pa. 1996). There, Delgado was convicted of tampering with or fabricating evidence. During an undercover operation, a confidential informant approached a garage in order to purchase drugs, met Delgado, and gave a pre-arranged hand sign that police should intervene. ***Id.*** at 224. Two agents approached Delgado, and he fled down an alley. ***Id.*** One agent saw Delgado throw something on top of a small outbuilding or garage. ***Id.*** This turned out to be a plastic bag containing 17.1 grams of cocaine. ***Id.*** Based upon these facts, Delgado was convicted of tampering with evidence under Section 4910(1).

When Delgado challenged the sufficiency of the evidence to support this

conviction, our Supreme Court explained:

> Delgado's act of discarding contraband in plain view of the pursuing officer fails to demonstrate the intent necessary to maintain a conviction under 18 § Pa.C.S. [*sic*] 4910(1). This section requires that an individual "alter[], destroy[], conceal[] or remove" a piece of evidence to be guilty of tampering with or fabricating evidence. Delgado's act of discarding contraband in plain view of the police does not rise to a level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute. ***The act of throwing the bag of cocaine while being chased by the police was nothing more than an abandonment of the evidence.***

*Id.* at 225 (emphasis added). The court further noted that a simple possession of cocaine charge was a third-degree misdemeanor, with a maximum punishment of one year of imprisonment. *Id.* Tampering with evidence, in contrast, is a second-degree misdemeanor, with a maximum penalty of two years of incarceration. *Id.* The *Delgado* Court stressed that, in considering the totality of the circumstances, it did not believe that our legislature "intended the simple act of abandoning evidence in plain view of the police to constitute the commission of an additional crime of a greater degree" than possession. *Id.* Consequently, the conviction for tampering with evidence was reversed. *Id.*

Appellant suggests that this same reasoning should apply to the facts of his case. We agree. Like the appellant in *Delgado*, Appellant threw a package of drugs out of his car window as he was being chased by police. The officer had notified Appellant that he was being pursued by turning on his lights and sirens. This is a mere abandonment of the evidence. Like our Supreme Court

- 14 -

in **Delgado**, we conclude that discarding the marijuana from his vehicle fails to demonstrate the intent necessary to maintain a conviction under this statute. In particular, this evidence does not rise to the level of conduct that constitutes altering, destroying, concealing or removing evidence. Accordingly, the evidence was insufficient to support this conviction.

In sum, we find that officers had a reasonable suspicion that criminal activity was afoot to justify stopping Appellant after what appeared to be a drug sale. However, even considering the totality of the circumstances in the light most favorable to the Commonwealth as the verdict winner, the evidence was insufficient to support Appellant's conviction for tampering with evidence. As Appellant received a sentence of 2 years' probation on this conviction, we must remand this matter to the trial court for a new sentencing hearing on the remaining convictions in this case.

Judgment of sentence affirmed in part and reversed in part. Case remanded for additional proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/07/2024

- 15 -