J-A15019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.D., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1749 MDA 2024 |

Appeal from the Dispositional Order Entered October 29, 2024
In the Court of Common Pleas of Dauphin County
Juvenile Division at No: CP-22-JV-0000445-2024

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.*

DISSENTING MEMORANDUM BY STABILE, J.:   **FILED: DECEMBER 31, 2025**

While I agree with the Majority's recitation of the facts and law, I disagree that Adult Probation Officer ("APO") Kinsinger possessed reasonable suspicion to justify an investigative detention of Appellant.  The Majority concludes that APO Kinsinger had reasonable suspicion to believe Appellant possessed a weapon based on (1) APO Kinsinger's awareness of prior calls of service involving Appellant; (2) Appellant was present in a high crime area walking toward a corner known for drug activity; and (3) Appellant refused to stop when APO Kinsinger called his name.

I respectfully disagree with the Majority's reliance on the prior calls of service to support reasonable suspicion for two reasons: (1) there was no

_____

* Former Justice specially assigned to the Superior Court.

evidence to establish that the reports were verified or corroborated and (2) the information was stale.

APO Kinsinger was not Appellant's assigned probation officer and was not involved with the calls of service. As such, APO Kinsinger had no knowledge of whether Appellant's assigned probation officer responded to the calls, whether the reports of Appellant with a weapon were valid, or whether there was an actual violation of probation. APO Kinsinger's testimony on this issue was brief:

> I also had prior knowledge of [Appellant from] conversations [with] other members of the Street Crimes Unit, including Corporal Crist, that there [were] several calls of service, I think, ranging from the end of March into April.
>
> I think the first one, the end of March, he was – there was a call of service that he was to have been robbed in an alley close to where he was currently walking. In April, I think the first call of service, it was reported that he was to be in possession of a firearm. And then only a couple days later, there was another call of service that he was supposed to be in possession of a large knife. So I knew that going in before I made my contact with [Appellant].
>
> * * * *
>
> [A]fter the calls of service had come in . . . it was brought to my attention that he was on juvenile probation. I had seen a picture of him. And, you know, with what was going on, you know, seemed like a good idea to make contact with him, if he was – could be potentially carrying a firearm or knife or other weapons.

N.T. Suppression, 9/12/24, at 8-9, 20. Other than drafting a search warrant for the residence of the people suspected of robbing Appellant, Corporal Crist

had no other involvement with the calls of service and had no direct contact with Appellant. *Id.* at 38.

The certified record is devoid of evidence or testimony establishing who reported that Appellant was in possession of a weapon, whether that person was anonymous or known to police, the basis of that person's information, or whether the information was reliable.[1]  Without that information, the reports in this case are no more reliable than an anonymous tip.  An anonymous tip must be "sufficiently corroborated by independent police work to give rise to a reasonable belief that the tip was correct." *Commonwealth v. Jackson*, 698 A.2d 571, 574 (Pa. 1997) (citing *Alabama v. White*, 496 U.S. 325 (1990)).  Moreover, "an anonymous tip that a particular person in a particular location is carrying a firearm does not, by itself, establish reasonable suspicion for an investigative detention." *Commonwealth v. Mackey*, 177 A.3d 221, 230 (Pa. Super. 2017) (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).  This standard does not change simply because Appellant was on juvenile probation.  *See, e.g.*, *In re J.E.*, 937 A.2d 421, 426 (Pa. 2007).  As there was no corroboration that on June 7, 2024, Appellant was in possession of a firearm, I do not find the prior service calls support reasonable suspicion to stop Appellant.

_____

[1] Although Corporal Crist characterized the calls of service as "documented police incidents," the Commonwealth failed to present such documentation to establish the veracity of the information, *i.e.*, that Appellant was in possession of a weapon.

Even if the reports were valid and Appellant was in possession of a weapon in April 2024, the information was stale. The stop occurred on June 7, 2024. The prior calls of service were in March and April 2024. While there is no bright-line rule to determine whether information is stale, "longer delays necessarily invite closer judicial scrutiny and that, at some point along the timeline, . . . information may become so stale that its probative value no longer is capable of supporting an investigative detention." *Commonwealth v. Farnan*, 55 A.3d 113, 117 (Pa. Super. 2012). While age alone does not determine staleness of information, "in cases involving investigatory stops based on reasonable suspicion from a tip, the stop generally takes place almost *immediately* after the tip." *United States v. Harris*, 604 F.Supp.3d. 309, 318 (E.D. Pa. 2022) (emphasis in the original).

Additionally, in my opinion, the fact that Appellant was in a high crime area does not support reasonable suspicion for an investigative detention. The Majority places great weight on the fact that Appellant was walking towards an intersection known for high criminal activity. However, the Majority discounts the uncontradicted testimony that Appellant lived one block from the intersection and was walking in the direction of his home. APO Kissinger merely saw Appellant walking toward that intersection at 3:00 p.m. in June – no other suspicious activity. It was equally possible that Appellant was going home as that he was going to engage in criminal activity at the intersection.

The Majority also found the fact that Appellant refused to stop when APO Kinsinger called his name supported reasonable suspicion. *See* Majority, at

- 4 -

However, the Majority ignored that Appellant had a right to "choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way." *Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019). Even probationers maintain their privacy rights and do not have to comply with a probation officer's suspicionless command to stop. *See Commonwealth v. Chambers*, 55 A.3d 1208, 1216-17 (Pa. Super. 2012).

Under the totality of the circumstances, the facts known to APO Kinsinger at the time he subjected Appellant to an investigative detention could not lead a reasonable officer to conclude that criminal activity was afoot. At most, APO Kinsinger had a hunch that Appellant *could be* in possession of a weapon. He failed to link this unsubstantiated belief with any concrete observations of suspicious or irregular behavior on the part of Appellant in June. *See Commonwealth v. Brame*, 239 A.3d 1119, 1131-32 (Pa. Super. 2020) (an officer's belief that criminal activity is afoot "must be linked with his or her observation of suspicious or irregular behavior of the particular suspect before he or she may conduct the stop."). Thus, I would conclude that the juvenile court erred in determining that the investigative detention of Appellant was lawful.

I respectfully dissent.