J-A08032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAQUILLE LEGETTE | : | |
| | : | |
| Appellant | : | No. 2348 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 23, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0004229-2022

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                          **FILED JULY 17, 2024**

Shaquille Legette appeals from the judgment of sentence imposed following his convictions for persons not to possess firearms and carrying a firearm without a license.[1] Legette argues the court erred in denying his motion to suppress. We affirm.

At the hearing on Legette's motion to suppress, the Commonwealth presented testimony of Officer Adam Schwartz of the Bensalem Township Police Department. Officer Schwartz testified that on June 12, 2022, while on routine patrol, he observed a vehicle traveling west on Street Road that had heavily tinted windows. N.T., 3/15/23, at 11-12. He stated that the window tint was so dark that he could not see inside the vehicle, other than "brief movement." *Id.* at 12.

---

[1] *See* 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

Officer Schwartz ran the vehicle's registration number and learned that the registered owner, Christopher Filemyr, had a suspended license. ***Id.*** Officer Schwartz continued to follow the vehicle for about 20 seconds before initiating a traffic stop. ***Id.*** at 14.

The vehicle pulled over into an empty parking lot. ***Id.*** It did not park in a parking space, but "crossed over several parking spaces." ***Id.*** at 15. Officer Schwartz stated he could see movement through the vehicle's rear window on both the driver side and passenger side, such that he knew there were at least two occupants inside the vehicle. But he could not see clearly or distinguish "who was inside or how many occupants." ***Id.*** at 15, 56. He could not identify any individual characteristics of the occupants, such as whether they were male or female, or the color of their clothing. ***Id.*** at 15.

Officer Schwartz approached the driver's side window. ***Id.*** at 16. The window was up, and Officer Schwartz stated the driver's side window was "heavily tinted[,] preventing me from really seeing inside of it." ***Id.*** He testified that the law requires that a vehicle's window must allow at least 70% of light to shine through it. ***Id.*** at 17, 59. He said that he did not use a tint meter, but, based on his training and experience, he believed that the tint on this vehicle was over the legal limit and too dark to have been factory-manufactured. ***Id.*** at 59, 74, 86. Officer Schwartz explained that "after-market tint is placed on the windows for sun screening after the production of the car. Factory tint already comes manufactured into the glass. So non-factory tint, you can scratch, you can remove it, you can peel it off, sometimes

- 2 -

[it] bubbles, whereas factory tint does not do that." *Id.* at 86; *see also id.* at 59-60.

Once the vehicle's window was rolled down, Officer Schwartz "immediately smelled an overwhelming odor of raw marijuana coming from within the vehicle." *Id.* at 21. He also saw a "roach," which is the bottom portion of a marijuana blunt/cigar, in the center cup holder. *Id.* at 21-22.

The driver of the vehicle, Legette, gave Officer Schwartz his driver's license, which was not suspended. *Id.* at 22-23, 26, 61. The vehicle's owner, Filemyr, was in the passenger seat. *Id.* at 23. He gave Officer Schwartz the vehicle registration but could not find his proof of insurance. *Id.* at 24, 26, 61. Filemyr said he was unable to retrieve proof of his insurance using his phone, and because there were "numerous papers scattered throughout the car," Officer Schwartz gave Filemyr additional time to try and locate his proof of insurance. *Id.* at 26, 46, 63. Both occupants appeared nervous, and Filemyr seemed to be under the influence of alcohol. *Id.* at 22-23.

Officer Schwartz contacted his supervisor, Corporal Todd Shapiro, to ask for permission to tow the vehicle. *Id.* at 26, 28. Officer Schwartz told Corporal Shapiro that the vehicle lacked proof of insurance and had heavily tinted windows, and that he had smelled marijuana. *Id.* at 29. Corporal Shapiro authorized the tow, and another officer, Alan Wolfinger, arrived on the scene. *Id.* at 26, 29.

Filemyr was still unable to provide proof that the vehicle had current insurance. *Id.* at 27. Filemyr declined to consent to a vehicle search. *Id.* at

- 3 -

32. Officer Schwartz asked Legette and Filemyr to step out of the vehicle so he could have it towed. *Id.* at 26, 32. As Legette stepped out of the vehicle, Officer Schwartz saw a marijuana bud on the driver's seat. *Id.* at 33. He asked Legette and Filemyr if either of them had a marijuana card, and both said they did not. *Id.* He asked if they had been smoking marijuana, and Filemyr admitted having done so earlier in the day, outside of the vehicle. *Id.* at 34.

Officer Schwartz began to conduct an inventory search of the driver's side of the vehicle. *Id.* at 35. Once he reached the center console, he immediately saw two firearms. *Id.* He stopped the inventory search and applied for a search warrant. *Id.* at 35-36.

Officer Schwartz testified that it is illegal to drive an uninsured vehicle on the roadway. *Id.* at 28. He stated that the policy of the Bensalem Township Police Department permits impounding vehicles for certain traffic-related offenses, including suspended insurance. *Id.* at 31; Ex. C-1 at 7. He testified that he decided to impound the vehicle in this case due to the lack of insurance. N.T., 3/15/23, at 75-76.

Officer Schwartz acknowledged that he has discretion whether to immobilize, impound, or release a vehicle that is unable to provide proof of insurance. *Id.* at 66, 91. He also testified that he had not intended to arrest Legette and Filemyr based on his observations of marijuana. *Id.* at 33, 36, 78. However, he explained that he had decided not to release the vehicle in this instance because he suspected that there were more drugs inside, Filemyr

appeared to be under the influence of alcohol, and Filemyr had admitted having consumed marijuana that day. *Id.* at 76-77, 86, 89, 91.

Officer Schwartz also testified that "based on the totality of the circumstances" he had decided not to allow the car to remain immobilized in the parking lot overnight. *Id.* at 66. He conceded there was no traffic in the parking lot, and it "wasn't like [he] had this car stopped on the side of 95, and [was] in a hurry to get it out of the way[.]" *Id.* at 79. Nonetheless, he testified that his department would not "leave a vehicle that did not have insurance, whose owner did not have a valid license and had presented under the influence of alcohol, at least, in a parking lot for that owner to retrieve[.]" *Id.* at 88. He also agreed his department does not "have the manpower to sit on a single vehicle . . . until valid insurance is produced the next day[.]" *Id.*

Officer Schwartz testified that department policy provides for an inventory search before a tow company impounds a vehicle. *Id.* at 30. He stated that the purpose of the policy is to secure the vehicle owner's property, to protect the police department from liability, and to ensure officer safety. *Id.* at 30-31; Ex. C-1 at 2-3. He acknowledged the policy states that an inventory search must be conducted in good faith and not for the purpose of gathering incriminating evidence or contraband. N.T., 3/15/23, at 68.

The court denied suppression. After a bench trial, the court found Legette guilty of the above charges and sentenced him to four to 10 years' incarceration and a concurrent seven years' probation. This appeal followed.

Legette raises the following issues:

1. Did the police officer have probable cause to stop the vehicle being operated by [Legette], where the police officer's alleged basis for stopping the vehicle was pretextual and did not constitute sufficient probable cause to stop the vehicle?

2. Was the traffic stop illegal, and in violation of [Legette's] rights under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution because the police officer did not have reasonable suspicion that the operator of the vehicle was in violation of any provisions of the Vehicle Code and was not supported by sufficient facts?

3. Did the initial unlawful traffic stop evolve into unlawful detention, unlawful search, and unlawful interrogation, without justification, and in violation of [Legette's] rights under the Fourth Amendment to the United States Constitution?

4. Did the subsequent inventory search of the vehicle, and the seizure of evidence from it, violate [Legette's] rights under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution where the initial traffic stop was illegal because there was no probable cause or reasonable suspicion to stop the vehicle, and there was no legal basis to warrant an inventory search?

Legette's Br. at 4-5 (lower court answers omitted).

The Commonwealth has the burden "of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); *see Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*). The trial court, as the fact-finder, must weigh the credibility of witnesses, and may accept all, part, or none of the evidence presented to it. *Heidelberg*, 267 A.3d at 499.

"When reviewing the denial of a suppression motion, this Court reviews only the suppression hearing record, and not the evidence elicited at trial." *Commonwealth v. Peak*, 230 A.3d 1220, 1224 (Pa.Super. 2020) (quoting *Commonwealth v. Frein*, 206 A.3d 1049, 1064 (Pa. 2019)). "Where the

record supports the suppression court's factual findings, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous." *Id.* (quoting *Frein*, 206 A.3d at 1064).

**The Initiation of the Traffic Stop**

Legette first argues the police needed probable cause to stop the vehicle based on its window tint, or, alternatively, reasonable suspicion, and that Officer Legette had neither probable cause nor reasonable suspicion that the tint exceeded the legal limit. Legette argues that (1) the police dashboard camera video shows that the police could see oncoming headlights through the rear window; (2) Officer Schwartz never drove alongside the vehicle, so he did not know whether the side or front windows were tinted when he initiated the stop; (3) once Officer Schwartz stopped the vehicle, he could see through the rear window that there were two occupants; and (4) Officer Schwartz's estimation that the window tint was over 30% was an unfounded, subjective, lay opinion, because he had not used a tint reader.

Legette also argues Officer Schwartz did not have probable cause or reasonable suspicion to stop the vehicle based on the suspended license of the registered owner. He notes that the officer did not know whether the owner was driving the vehicle.

Where a traffic stop is "based on the observed violation of the Vehicle Code or [an] otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." *Commonwealth v. Gurung*, 239 A.3d 187, 190-91 (Pa.Super. 2020) (quoting *Commonwealth*

*v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017)). If, on the other hand, the traffic stop is based on an offense that requires further investigation, the police need only reasonable suspicion. *See* 75 Pa.C.S.A. § 6308(b); *Commonwealth v. Feczko*, 10 A.3d 1285, 1287-88 (Pa.Super. 2010) (*en banc*).

Reasonable suspicion, which is a lower standard than probable cause, is defined as follows.

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Chambers*, 55 A.3d 1208, 1215 (Pa.Super. 2012) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005)).

This issue is meritless. Where an officer suspects the operator of a vehicle is driving with a suspended license, he may initiate a traffic stop to investigate. *See Commonwealth v. Farnan*, 55 A.3d 113, 118 (Pa.Super. 2012). An officer may reasonably assume that the owner of the vehicle is the person driving it, if the officer possesses no information negating that inference. *See Kansas v. Glover*, 589 U.S. 376, 378 (2020) (holding that "when the officer lacks information negating an inference that the owner is

the driver of the vehicle, the stop is reasonable"); *Commonwealth v. Jefferson*, 256 A.3d 1242, 1249-50 (Pa.Super. 2021) (*en banc*).[2]

Here, the vehicle records obtained by Officer Schwartz indicated that the vehicle's owner, Filemyr, had a suspended license. Officer Schwartz reasonably inferred that Filemyr was the driver of the vehicle at the time he initiated the stop. He possessed no information to negate this inference. Even if the police can identify whether the driver of a moving vehicle is the owner in other situations, here, Officer Schwartz testified that he could not see anything through the tinted rear window. He therefore reasonably suspected that the owner of the vehicle was driving while suspended and was authorized to stop the vehicle to investigate.

Based on the foregoing, we need not determine whether Officer Schwartz also had reasonable suspicion or probable cause to stop the vehicle based on the window tint. We nevertheless conclude that Officer Schwartz had at least reasonable suspicion to stop the vehicle for that reason as well. The Motor Vehicle Code prohibits a person from driving a vehicle with window tint that "does not permit a person to see or view inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). Whether a traffic stop based on tinted windows requires the police to have probable cause or reasonable suspicion is based on whether the

---

[2] *See also Commonwealth v. Hutchinson*, No. 1391 EDA 2022, 2023 WL 8453141, at **6 (Pa.Super. 2023) (unpublished mem.), *appeal denied*, No. 3 EAL 2024, 2024 WL 2148380 (Pa. May 14, 2024) (citing *Glover* and finding reasonable suspicion that registered owner would be driver of vehicle).

- 9 -

violation was immediately apparent or required further investigation. ***Commonwealth v. Prizzia***, 260 A.3d 263, 269 n.2 (Pa.Super. 2021).

Here, Officer Schwartz testified that the rear window appeared so dark that he could not see inside the vehicle when he was following behind it. The court stated that it "viewed Officer Schwartz'[s] dash cam footage of the incident and confirmed that the vehicle's window tint was so dark it was practically impossible to see inside the vehicle." Trial Court Opinion, 10/16/23, at 6. The footage from the police dashboard camera is not in the certified record. ***See Commonwealth v. Preston***, 904 A.2d 1, 7-8 (Pa.Super. 2006) (*en banc*) (stating it is appellant's duty to ensure certified record is complete, and where it is not, issues may be waived). Moreover, our review of the body camera video reveals that it is consistent with the officer's testimony and the trial court's conclusion. The window tint on the rear window therefore also provided a sufficient basis to stop the vehicle.

Legette's arguments do not hold water. Because the vehicle's rear window was tinted so heavily that "it was practically impossible" to see through the window, Officer Schwartz had reasonable suspicion that the windshield was similarly tinted. Legette's claim that Officer Schwartz could discern the number of occupants inside the vehicle distorts the testimony. Officer Schwartz stated that because he could see movement from both sides of the vehicle, he inferred there were at least two occupants. But he could not determine the exact number of occupants. Furthermore, Officer Schwartz did not testify as to the exact level of tint of the windows. He only gave an opinion

that it was well over the legal limit of blocking 30% of light. He formed this opinion based on his knowledge and experience. Regardless, Section 4524(e)(1) does not require the tint to exceed 30% for a violation. ***See Commonwealth v. Brubaker***, 5 A.3d 261, 264-66 (Pa.Super. 2010). The initiation of the stop was lawful.

### The Scope of Inquiry and Length of Detention

Legette next argues Officer Schwartz impermissibly prolonged the stop to investigate matters unrelated to the reasons for the stop. He argues that because Officer Schwartz stopped the vehicle due to a suspicion of overly tinted windows and a suspended driver's license, he should have restricted his interactions with Legette and Filemyr to resolving those issues. He asserts that the latter inquiry should have ended once Officer Schwartz realized Filemyr was not the driver. Legette argues that because Officer Schwartz testified he was not going to make an arrest based on the evidence of marijuana, he failed to articulate facts suggesting that criminal activity was afoot such as would have provided a basis for prolonging the stop to question the occupants regarding marijuana. Legette further asserts that the scope of the questioning proves that Officer Schwartz's reasons for initiating the stop were pretext.

The Commonwealth argues this claim is waived, and we agree. Where a defendant raises an issue in a suppression motion but abandons it at the suppression hearing, the issue is waived for appellate review. ***See Commonwealth v. Bartee***, 868 A.2d 1218, 1221 n.6 (Pa.Super. 2005).

Legette did not argue during the suppression hearing that Officer Schwartz prolonged the traffic stop or exceeded its scope. He instead limited his arguments to the initiation of the stop. *See* N.T., 3/15/23, at 5-7 (stating grounds for motion to be lack of reasonable suspicion or probable cause to initiate traffic stop or conduct a search); N.T., 4/19/23, at 3-17 (arguing police had no authority to initiate a stop and the inventory search was pretext for finding drugs or other contraband). Accordingly, the trial court did not rule on this issue. *See* Findings of Fact and Conclusions of Law, 5/11/23, at 4 (stating Legette's arguments were that the police did not have probable cause or reasonable suspicion to stop the vehicle or conduct an inventory search). Nor did the court address it in its Rule 1925(a) opinion. *See* Trial Ct. Op., at 11 (relying on Findings of Fact and Conclusions of Law to address claims on appeal).

Even if not waived, this claim lacks merit. Authority for a traffic stop ends when the "tasks tied to the traffic infraction are—or reasonably should have been—completed." ***Commonwealth v. Malloy***, 257 A.3d 142, 149 (Pa.Super. 2021) (quoting ***Rodriguez v. United States***, 575 U.S. 348, 354 (2015)). However, police officers are allowed to make "incidental inquiries aimed at ensuring the safe and responsible operation of vehicles on the highway" such as inspecting the vehicle's proof of insurance. ***Id.*** at 149-50. Furthermore, new information obtained during the natural course of a stop can provide a basis to extend the stop and commence a new investigation.

*See Commonwealth v. Chase*, 960 A.2d 108, 115 n.5 (Pa. 2008); *accord Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa.Super. 2019).

Here, even though Officer Schwartz pulled the vehicle over based on his suspicions of overly tinted windows and a suspended driver's license, he was permitted to ask whether Filemyr had proof of insurance. Furthermore, the marijuana odor and the roach were immediately apparent to Officer Schwartz when he began talking to Legette. This gave him a basis to inquire as to whether any marijuana-related criminal activity was afoot, regardless of whether Officer Schwartz ultimately decided to arrest Legette based on his observations of marijuana.

### The Inventory Search

Finally, Legette argues that even if the stop was proper and police lawfully questioned him about issues unrelated to the reasons for the stop, the police ordered the vehicle to be towed as a pretext to search the vehicle. He asserts that they could have immobilized it and allowed Filemyr to retrieve it the next day after providing proof of insurance. Legette points out that Officer Schwartz told his supervisor about the marijuana smell and asserts that this was the reason the supervisor authorized the tow. He also points out that Officer Schwartz did not order the vehicle towed until after he saw the marijuana bud. Legette argues this evidence proves that the inventory search was conducted in bad faith and for the purpose of gathering incriminating evidence and/or contraband.

Police may lawfully impound a vehicle that lacks insurance pursuant to their "traditional community care-taking function." ***Commonwealth v. Henley***, 909 A.2d 352, 365 (Pa.Super. 2006) (*en banc*). This is because the owner of an uninsured vehicle may not be able to cover the cost of damages resulting from an accident, and thus jeopardizes public safety. ***Id.*** Once police have lawfully impounded a vehicle, they may conduct an inventory search if doing so is "in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." ***Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013).

Here, Officer Schwartz testified that the policy of his department provides for impounding uninsured vehicles and for routinely searching impounded vehicles to secure and inventory their contents. This comports with the law. Legette offers no authority requiring the police to immobilize an uninsured vehicle and leave it unattended and parked across three parking spaces. Officer Schwartz testified that he decided impounding the vehicle was the safest option, given that he smelled fresh marijuana, Filemyr had confessed to smoking marijuana earlier in the day, Filemyr was under the influence of alcohol, and Filemyr lacked a valid driver's license. We defer to the trial court's crediting Officer Schwartz's testimony and it committed no error in finding the inventory search lawful. ***See*** Findings of Fact and Conclusions of Law at 7 (finding "the search was reasonably conducted and was not a subterfuge for a criminal investigation").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  7/17/2024